[Life Association of America v. Neville.]

# Life Association of America *v.* Neville.

### *Bill in Equity by Surety against Creditor, asking Injunction and Cancellation of Note and Mortgage.*

1. *Discharge of surety by tender, or offer to pay by principal.*—A formal tender to the creditor, by the principal debtor, of the full amount of the debt after maturity, and the refusal of the creditor to accept it, discharge the surety; but a general offer to pay, not having the formalities of a legal tender, and not definitely refused by the creditor, has no legal effect on the liability of the surety, unless it operates to his injury or prejudice.

2. *Same.*—If the principal debtor was insolvent at the time when such informal offer was made and declined, the creditor's failure to accept it operates to the prejudice and injury of the surety, and therefore discharges him.

3. *Proof of collateral fact.*—When a fact arises collaterally, the rules of evidence do not require as strict proof of its verity, as when it is directly in issue.

4. *Proof of insolvency of decedent's estate.*—When notes and other presumptive evidences of debt are duly filed against a decedent's estate, exceeding in amount the available assets, the estate is, *prima facie,* insolvent; and proof of these facts sufficiently establishes the insolvency of the estate, when the question arises collaterally, although some of the claims may be litigated.

5. *Agent's authority to collect or retain.*—An agent of an insurance company, having authority *to settle* a policy of insurance on the life of a deceased person, whose estate is insolvent, has implied power to retain for a debt due from the decedent to the company, when the administrator offers to allow it.

6. *Sufficiency and weight of proof.*—The general principle is recognized, that when the evidence leaves a disputed fact in doubt and uncertainty, the issue must be found against the party on whom rests the burden of proof; yet courts and juries should rather weigh the testimony than count the witnesses, and should not render a decision on a mere preponderance which fails to produce a proper conviction in their minds.

7. *Contents of transcript; opinion on former appeal.*—An opinion delivered by this court, on a former appeal, is not properly a part of the record on a second appeal, and no costs will be allowed for it. "This rule has been heretofore announced, and the court sees fit to declare its purpose to adhere strictly to it in the future."

APPEAL from the Chancery Court of Madison.

Heard before the Hon. N. S. GRAHAM.

This case was before the court at its December term, 1879, on appeal from a decree dismissing the bill for want of equity; when the chancellor's decree was reversed, and the cause remanded.—63 Ala. 419. The bill was filed on the 20th May, 1879, by James T. Neville, as the administrator of the estate of Worley White, deceased, against the present appellant, a cor-

poration chartered under the laws of Missouri, but doing business, through its agents, in Alabama. Its object and prayer was to enjoin a sale of lands under a power contained in a mortgage, and to have the mortgage and secured note cancelled and declared satisfied, on the ground that said Worley White signed the note only as the surety of one Mike White, since deceased, and was discharged from liability because, on a settlement had between said corporation and the widow and administratrix of said Mike White, the corporation paid to said administratrix the sum of $7,500 on a policy of insurance on the life of said Mike White, and failed to retain the amount due on said note, although the administratrix offered to allow it, and the estate of said Mike White was insolvent. The amount of the policy was $10,000, but $7,500 was paid and received in full satisfaction of it. The settlement was made, or agreed upon, May 25th, 1878, by and between A. K. Fassett, the special agent of the insurance company, and L. W. Day, as the attorney of said administratrix. The defendant, in its answer to the bill, denied that the estate of said Mike White was insolvent, and denied that there was any offer by the administratrix, or by her attorney, to allow the amount of the note to be included in the settlement, or to be deducted from the amount of the policy; and these two questions of fact were the principal matters controverted.

Said L. W. Day, whose deposition was taken by the complainant, thus testified: " The said note for $1200 was referred to in a conversation, or conversations, between said A. K. Fassett and myself, during his stay in Huntsville, pending an attempt to adjust the claim of Mrs. Mike White against said Life Association of America. I do not remember that it was mentioned at the time of the making of said receipt indorsed on the policy, as that receipt was the result of a settlement and compromise before that time agreed on. I will not attempt to state the exact conversation between said Fassett and myself, regarding said note. In substance, I suggested to him that, in the settlement between Mrs. White and said association, the debt of $1200 be deducted from the amount which should finally be agreed on as payment to Mrs. White to satisfy the policy on her husband's life. He declined to adjust the $1200 debt, saying that they settled, or, possibly, that he preferred to settle, one thing at a time. . . . I do not think the matter was mentioned at the time the money was paid. Mr. Fassett had declined to adjust said $1200 debt, as before stated, and the compromise was made for $7,500, wholly aside from any consideration of said $1200 debt. My best recollection is, that nothing was said about the note on the day the payment was made in settlement of the policy. I can not state who first introduced the subject of the $1200 note. I suggested that it

[Life Association of America v. Neville.]

enter into and become a part of the settlement we were attempting to make."

Fassett, whose deposition was taken by the defendant, denied that any offer was made as stated by Day, and thus testified: "I visited Huntsville, in May, 1878. I went there to settle a policy on the life of Mike White, deceased, which policy was in the Life Association of America. I was the special agent of said association to settle said policy. I think I know of the $1200 note mentioned. My impression is, I did not have the note with me. I am quite sure I never saw the note referred to. When I came to Alabama to settle said policy, I knew that defendant held a note on Mike and Worley White, but the note was not due, the interest having been paid, and the note thus extended. Neither said Day nor Mrs. White ever proposed to me to pay said note, or to receive the same as part payment of said policy on the life of Mike White. I did not settle the policy, but gave the money, $7,500, to Mr. Shelby, the lawyer, to settle it; and he brought me the policy receipted. As defendant's agent, I did settle the policy; but the money was paid through Mr. Shelby, as my agent."

As to the solvency or insolvency of Mike White's estate, said L. W. Day thus testified: "The debts presented against said White's estate amount to about $9,456, [with?] interest. The entire assets that have come to the hands of the administratrix would amount to about $7,800. Estimating the liabilities of said estate by the debts presented, it would be insolvent." He further stated, in answer to cross-interrogatories, that said administratrix, acting under his legal advice as her attorney, had paid several of the debts in full, and added: "It is true that I consider said estate solvent, but its solvency depends upon the result of litigation now pending in this court, under a bill filed by Mrs. White as such administratrix, to compel the cancellation and surrender of notes for a large amount presented against said estate; and my belief in the solvency of the estate is, of course, based on my opinion that she is entitled to, and will obtain, a decree in her favor under said bill." This was all the evidence adduced in reference to the condition of said White's estate.

On final hearing, on pleadings and proof, the chancellor held the complainant entitled to relief, and rendered a decree as prayed in the bill; and his decree is now assigned as error.

WALKER & SHELBY, for appellant.

D. P. LEWIS, contra.

SOMERVILLE, J.—There seems to be little or no doubt as

to the doctrine, that if the principal makes a *formal tender* to the creditor, of the full amount of a debt already due, the creditor is bound to accept it, or, if he refuses to do so, the surety will be discharged.—Brandt on Suretyship, § 295. It is regarded, sometimes, as an extension of the loan, to which transaction the surety was not a party, and by which, therefore, he is not bound.—*McQuesten v. Noyes*, 6 N. H. 19. And, at other times, it has been pronounced a sort of fraud on the surety, whose relationship is said always to import entire good faith, and the utmost confidence.—*Saille v. Elmore*, 2 Paige, 497.

The rule is not precisely the same, where there is a *general offer to pay* made by the principal, *without the formalities of a legal tender*, and unaccompanied by a definite refusal to accept on the part of the creditor. Such an informal offer, when refused by the creditor, is generally construed as a mere gratuitous indulgence, having no legal effect upon the liability of the surety, *unless it operates to prejudice or injure him*. Such is the doctrine recognized in *White's Adm'r v. The Life Association of America*, 63 Ala. 420, the title under which this case was reported when last before this court on appeal. It was also adjudged in that case, after a most thorough and exhaustive review of the authorities, that if the principal was *insolvent* at the time of the tender, thus informally made and declined, the case would no longer be one of mere gratuitous indulgence, such as the law tolerates with complacency, but of positive wrong to the surety, discharging his liability, because it operates to his prejudice and injury. It is unnecessary that we should further discuss these propositions. It is enough to announce that we here re-affirm them.

The evidence contained in the record is, in our opinion, sufficient to show, *prima facie* at least, that the estate of Mike White, the principal maker of the note due the appellant, was insolvent at the time of the transaction in question, in May, 1878. When a fact arises collaterally, the rules of evidence never exact as cogent proof in affirmation of its verity, as where it is directly in issue. If the notes of the intestate, and other presumptive evidences of his indebtedness, which are presented for payment to the administrator, exceed in amount the assets of the estate, which are available for the payment of debts, a *prima facie* case of insolvency exists. It is immaterial that some of these claims are in litigation, and are alleged to have been settled. If they are in the form of promissory notes, or other like written acknowledgments of indebtedness, which are in the possession of the creditor, the law does not presume they are paid, but the *onus* of such a defense is cast upon the maker. The proof seems clear that the estate was insolvent, provided the controverted debt of some eight thousand dollars, then in

process of chancery litigation, remained unpaid as a subsisting claim against it,—a fact which must be assumed, in the absence of proof to the contrary.

It is urged that Fassett had no authority to collect the twelve hundred dollar debt due by White's estate to the Life Association of America, and that for this reason he was excusable for not accepting the offer of payment, even if, in truth and fact, it was made. Fassett is shown, however, to have been invested with the power *to settle* the policy of insurance on White's life, —a debt which was then due his estate. This general power, we think, embraces the special one to retain for a debt due by an insolvent estate, when an offer to pay in this manner was made by one representing the debtor. Especially is such an inference justifiable, in view of the fact that the appellant fails, in its answer to the bill, to deny the possession of such authority by its constituted agent, and the agent himself evades an answer to a special interrogatory touching the matter. The fifth direct interrogatory to Fassett's deposition, for example, reads as follows: "Did you, or not, have with you for collection, or *authority to collect*, a note against Mike White and Worley White, for $1200?" *Answer:* "My impression is, that I did not have the note with me. I am quite sure I never saw the note referred to;" thus affirming nothing inconsistent with the authority to collect.

It is not contended by the appellee that there was any formal tender of the twelve hundred dollar debt to Fassett. It is only insisted that there was an offer to permit him to retain the debt, from the seven thousand five hundred dollars paid by the company, through him, in compromise of the policy of insurance on the life of Mike White. There is a plain conflict in the testimony on this point. Day, who was the attorney for the administratrix of White's estate, testifies very positively that the offer was made by him, and declined by Fassett, during the progress of the negotiations; for what reason, it does not clearly appear, except that the refusal was not referred to any want of authority in the agent. Fassett, in his testimony, denies Day's statement, and asserts that neither he nor the administratrix ever made such an offer. When subjected to cross-examination on the subject, however, his answers do not evince that entire candor and freedom from equivocation, which should ever be the handmaids of truth, and the presence of which strengthens a deponent's testimony as much as their absence must be construed to weaken it. While we fully recognize the principle, that whenever the evidence in a cause leaves a disputed fact in doubt and uncertainty, the issue must be found against the party upon whom the burden of proof rests; yet courts and juries should rather *weigh* than *count* the testimony of witnesses, and a de-

[Banks & Wood v. The State.]

cree or verdict should never be found by them on a mere preponderance which fails to produce a proper conviction or satisfaction in their minds, if, indeed, such conviction can, strictly speaking, ever be said to exist, in the absence of a preponderance of the evidence.— *Vanderventer v. Ford*, 60 Ala. 610. We are not inclined to reverse the finding of the chancellor on this issue, as we are far from being convinced that he was in error.

The opinion of this court, rendered on the former appeal taken in this case, is properly no part of this record, and should not have been copied in the transcript. No costs therefore will be allowed the register for this portion of the record,—a rule which has heretofore been announced, and one to which the court sees fit to declare its purpose to adhere strictly in the future.—*Lake v. Security Loan Association*, at the present term, *ante*, p. 207.

The decree of the chancellor is affirmed.

STONE, J., not sitting.