# Graham v. The State.

## Indictment for Carrying Concealed Weapons.

1. *Revision of judgment of court on evidence, without presumption in its favor.*—Under the statute regulating the trial of misdemeanors in the County Court of Shelby, when the trial is had before the court without a jury, either party may, by bill of exceptions, bring the case to this court for review, and this court is required to decide it without any presumption in favor of the judgment of the lower court (Sess. Acts 1890–91, p. 580); and in the exercise of this jurisdiction in this case, the court affirms the judgment of conviction, having regard to the weight of the evidence and the probability of the facts testified to, rather than to the number of witnesses.

FROM the County Court of Shelby.

Tried before the Hon. R. W. COBB.

WM. L. MARTIN, Attorney-General, for the State.

COLEMAN, J.—The defendant was convicted in the County Court of Shelby county of the offense of carrying concealed about his person a pistol. The trial was had by the court, without a jury.

The statute (Acts of 1890–91, p. 580), provides for an appeal from the County Court to the Supreme Court, and declares that "either party may, by bill of exceptions, also present for review the conclusions and judgment of the court on the evidence; and the Supreme Court shall review the same without any presumption in favor of the ruling of the court below on the evidence; and if there be error, shall render such judgment in the cause as the court below should have rendered, or reverse and remand the same for further proceedings, as to the Supreme Court shall seem right." We will not now consider the effect of that part of this statute, which confers on the State generally the same right of appeal in criminal cases as that conferred upon the defendant. We believe

[Graham v. The State.]

this is the only statute of this State, where it has been attempted to confer upon the State the right of appeal in criminal cases, unless the statute was declared unconstitutional, and which confers on this court not only the authority to reverse and remand for error, but to reverse and render such judgment as the court below should have rendered.

The question presented by the record for review is the correctness of the conclusion and judgment of the trial court on the evidence.

A witness for the State testified positively, that he saw the defendant place the pistol in the pocket of his shirt, and put a coat on, and button the coat, so as to conceal entirely from view the pistol, and in this condition went from his own house to the house of Isaiah DeYampert. For the defendant, Isaiah DeYampert testified, and his testimony was corroborated by other members of his family, and probably by a witness who may not have been related to any of the parties, that he saw the defendant, from the time defendant left his own house, until he reached the house of the witness, and that defendant had no coat on—was in his shirt sleeves—and carried the pistol in his hand the entire time. The evidence for the defendant is in direct conflict with that of the State.

The credibility of the witnesses was and is the only matter in controversy. The trial court believed the testimony of the witness for the State. We are asked to review this finding. Undoubtedly, if all the witnesses are equally intelligent, and equally truthful and free from influence or bias, and have the same opportunities for knowing the facts testified to, and testify from such knowledge, a court could safely, and ought to credit the greater number, on the ground that none are presumed to have testified falsely, and the many would be less likely to be mistaken than a less number.

It is a sound principle of law, verified by experience, that the greater weight of testimony to sustain or disprove the existence of a fact, can not always be determined by the number of witnesses testifying; and as was said in the case of *Life Asso. v. Neville*, 72 Ala. 521, "courts and juries should rather weigh than count the testimony of witnesses." Where a witness is subjected to an oral examination and cross-examination skillfully applied, in the presence of a court or jury, the due and proper weight to be given to the testimony of the witness, can be ascertained much more certainly and satisfactorily, than when read by a court of review from the record. Mr. Taylor, in his work on evidence, § 52, says, a careful attention to the demeanor of a witness will furnish a valuable guide in testing

[Graham v. The State.]

the truth of his evidence. When a witness is over-zealous; answering without waiting to hear the question; forgetting facts when he would be open to contradiction; minutely remembering those which can not be disputed; replying evasively, and in many other tests stated by him, we have indications more or less conclusive of the insincerity and falsity of the witness. Those who are accustomed to courts, and *nisi prius* trials, where witnesses are orally examined, know that much aid in arriving at the truth is derived from the demeanor of the witness on the stand; his temper, his leaning or bias, if any is exhibited; the tone of his voice and manner on cross-examination in replying to questions, calcu- lated to modify or explain other parts of his evidence. The absence or presence of these, and other expressive outward signs, so indicative of the truth or insincerity of the witness, and valuable aids in determining his credibility, as a general rule, can not be seen in the record. Where the evidence be- fore the trial court consists of depositions, the reviewing court has all the advantages of the lower court, and can weigh and correctly determine whether the conclusions of the trial court were authorized by the evidence. We doubt that the ends of justice are promoted by devolving upon this court the duty of weighing the evidence and determining the credibility of witnesses in criminal cases.

If the offense charged was committed, it occurred in March. The defendant was in the employment of Isaiah DeYampert. All the witnesses except one, it seems, were in DeYampert's house, when the defendant reached there. Two or three were members of his family, and the others seemed to have been staying with him. The trial took place in June. There is nothing in the record to show why the occurrence of carrying the pistol should have been specially fixed in the recollection of the witnesses; and yet, three months after, at the date of the trial, the several witnesses agree exactly in the minute circumstances of the occurrence. Isaiah DeYampert testifies, that he was looking at the defendant when he came out of his house; that the defendant was in his shirt sleeves, and had the pistol in his hand, although the witness was about one hun- dred yards distant; and that he watched the defendant all the way, until the pistol was delivered to another person. Possi- bly this was true, and the same may be said of the testimony of the other witnesses for the defendant; but this exact agree- ment in details, even to the use of the same words in their testimony, conveys the impresson of collusion on their part.

We concur in the conclusion of the trial court.

Affirmed.