THE ESCAMBIA COUNTY ELECTRIC LIGHT AND POWER COMPANY, A CORPORATION, *Plaintiff in Error*, v. FANNIE M. SUTHERLAND, *Defendant in Error*.

1. There is no reversible error in the ruling of the court refusing a motion to strike out or amend a count in a declaration claiming damages for negligent acts of the defendant, when it appears that all the proof adduced by the plaintiff was confined to specific acts of negligence set up in other counts.

2. In an action by a widow claiming damages for the negligent killing of her husband, no reversible error is committed in permitting the plaintiff to introduce evidence as to the number and ages of the living children, of herself and her deceased husband.

3. Where in an action by a widow for the negligent killing of

her husband by electricity furnished by defendant, there is some evidence tending to show that the body of the deceased came in contact with an electric current sufficient to cause his death, there was no error committed in permitting the plaintiff to propound to a witness who was a physician who examined the body of deceased this question: "If it were a fact that just at the time or prior to the death of Sutherland (plaintiff's deceased husband) his body came in contact with an electric wire or apparatus conveying electricity carrying 1000 volts or 1500 volts, would that have produced death according to your knowledge of the body and conditions as I have stated."

4. The ruling on the subject of hypothetical questions in Baker v. State, 30 Fla., 41, 11 South. Rep., 492, cited and approved.

5. Where there are several instructions upon one proposition, which are not contradictory, and which when construed together fairly state the law on that proposition no reversible error is shown in an objection to one alone of such instructions.

6. Corporations act and perform their duties through the agency of their servants and employees. Where it is the duty of a corporation to perform an act, and the authority to do it is imposed on one of its employees, such employee stands in the place of and as a representative of the corporation, and the corporation is responsible for the negligence of the officer or agent charged with the performance of such duty.

7. To state in one part of a charge to the jury that which makes a company furnishing electricity to its patrons a practical insurer of the safety of those patrons, and to state in another part of the charge that such a company is not an insurer, is to state contradictory or repugnant propositions, and such a charge is universally held to contain reversible error, unless the evidence is such that the jury could not have been misled.

8. A charge should not impose upon a defendant a duty not shown to exist.

9. Inasmuch as the charge and instructions in this case, as well as the large number of cited cases show the difficulty of putting into a harmonious formula of words a definition of the duty which an electric company owes its patrons, this court in order to simplify the matter adopts the following: "An electric company furnishing light to its patrons, while not an insurer against all possible accidents to those whose right or duty is to use its electricity, yet is under obligation to do all that human care, vigilance and foresight can reasonably do, consistent with the practical operation of its plant, to protect such persons."

10. Argumentative propositions used by courts in evolving a legal principle should not be given in charge to a jury.

11. To entitle a plaintiff, or party upon whom the burden of proof lies, to a verdict, the evidence should preponderate in his favor and produce in the minds of the jury a reasonable belief of the facts essential to the verdict.

12. A defendant has no right to complain of the language used by the judge in a part of his charge, when the same language occurs in several instructions given at the request of such defendant.

13. There is no error in refusing an instruction covered by the general charge of the trial court or other instructions.

14. There is no error in refusing an instruction based on a theory of the evidence, which is not in fact borne out by it.

15. Where an error has been committed in defining the duty of a defendant electric company to its patrons, to be harmless to the defendant, the evidence must be of such a character as would not reasonably have warranted any other than a verdict for the plaintiff.

This case was decided by Division B.

Writ of error to the Circuit Court for Escambia County.

170     SUPREME COURT OF FLORIDA.

Escambia County E. L. & P. Co. v. Sutherland—Statement of Case.

STATEMENT.

Fannie M. Sutherland brought a suit at law for damages against The Pensacola Electric Company and The Escambia County Electric Light and Power Company, a corporation, and in March, 1910, filed four amended counts to her declaration. The first two counts are as follows:

"3. The plaintiff, Fannie M. Sutherland, by her attorneys, sues the defendants, The Pensacola Electric Company, a corporation, and The Escambia County Electric Light and Power Company, a corporation, for that on and before the —— day of September, A. D. 1909, the defendants were possessed of, owned and operated in the City of Pensacola, Florida, a certain electric power plant, from which they supplied to the public, for hire, electric power for lighting and mechanical purposes; that on and before said date, the defendants, for hire, supplied to H. G. De-Silva & Co. in said City of Pensacola, electric power by means of a certain wire extending from defendants power plant to the planing mill of said H. G. DeSilva & Co., for the purpose of illuminating said mill by and through a certain incandescent light connected with said wire; that on and before said date it became and was the duty of defendants to connect the aforesaid incandescent light with their main wire extending from their said power plant to said planing mill of H. G. DeSilva & Co. by means of a wire properly and securely insulated and to see that said wire was at all times thereafter properly and securely insulated when in use so that persons who had a right to come in contact with said wire would be protected from the electricity transmitted through said wire to the incandescent light aforesaid, but notwithstanding their duty in this behalf, the defendants carelessly and negligently allowed said wire to become uninsulated and dangerous to the lives of persons who had a right to come in contact

with said wire; that, on said date, Charles W. Sutherland, plaintiff's lawful husband, who was then and there in performance of his duties as a bricklayer performing certain work for the use and benefit of said H. G. DeSilva & Co. came in contact with said wire as he had a right to do, whereby he was severely shocked by the electric current supplied by the defendant in the manner aforesaid, through said wire so negligently and dangerously exposed and uninsulated from the effects of which he died.

And plaintiff claims $35,000.00.

4. The plaintiff, Fannie M. Sutherland, by her attorneys, sues the defendant, The Escambia County Electric Light and Power Company, a corporation, and The Pensacola Electric Company, a corporation, for that, on and before the —— day of September, A. D. 1909, the defendants were possessed of, owned and operated in the City of Pensacola, Florida, a certain electric power plant, from which they supplied to the public, for hire, electric power, for lighting and mechanical purposes; that, on and before said date, the defendants for hire, supplied to H. G. DeSilva & Co., in said City of Pensacola, electric power by means of a certain wire extending from defendants power plant to the planing mill of said H. G. DeSilva & Company for the purpose of illuminating said mill by and through a certain incandescent light connected with said wire; that on and before said date it became and was the duty of defendants to supply said electric power to said H. G. DeSilva & Co. in the manner and for the purposes aforesaid, in such manner and in such quantity as would be reasonably safe to those persons who had a right to come in contact with said incandescent light, or the wire by which said incandescent light was attached to the main wire as aforesaid, and through which the necessary electricity passed, and to this end it became and was the duty of defendants to install a certain transformer, in good condition and

properly equipped and to keep the same in good condition, and properly equipped for the purpose for which it was installed, at a point on the main wire leading from defendants power plant to said incandescent light, between the point where said main wire lead from defendants said power plant to the point where said main wire entered the planing mill of said H. G. DeSilva & Co., the purpose of which being to reduce the high and dangerous voltage passing from the defendants power plant by means of said main wire to a lesser and safe voltage but sufficient in quantity for the purpose hereinbefore mentioned, to the wire leading to the incandescent light aforesaid, and by which said incandescent light was connected with the main wire aforesaid, but notwithstanding its duty in this behalf, the defendant carelessly and negligently allowed said transformer to become out of good condition and to become improperly equipped for the purpose for which it was installed, and to thereby permit a dangerous and excessive quantity of electricity to pass from defendants power plant to said incandescent light, and the wire by which it was connected as aforesaid, by means of the main wire leading from defendants power plant to said incandescent light; that on said date by reason of defendants carelessness and negligence as aforesaid, the said incandescent light, and the wire by which it was connected became excessively and dangerously charged with electricity from defendants power plant as aforesaid thereby endangering the lives of persons who had a right to come in contact with said incandescent light, and the wire by which it was connected; that, on said date, Charles W. Sutherland, plaintiff's lawful husband, who was then and there in performance of his duties as a brick layer, performing certain work for the use and benefit of said H. G. DeSilva & Co., came in contact with said incandescent light, and the wire by which it was connected to the main

wire as aforesaid, as he had a right to do, whereby he was severely shocked by the electricity supplied by defendants in such negligently excessive and dangerous quantity as aforesaid, from the effects of which he died.

And the plaintiff claims $35,000.00."

The count numbered 5 alleges generally that the defendants carelessly and negligently caused and permitted the said incandescent light and the wire by which it was connected as aforesaid to become excessively charged with electric current supplied by it as aforesaid and to thereby become dangerous to the lives of persons who had a right to come in contact with said incandescent light and the wire by which it was connected as aforesaid.

The count numbered 6, was as follows: "The plaintiff Fannie M. Sutherland, by her attorneys, sues the defendant, The Escambia County Electric Light & Power Company, a corporation, and The Pensacola Electric Company, a corporation, for that on the ——— day of September, A. D. 1909, the defendants were possessed of, owned and operated in the City of Pensacola, Florida, a certain electric power plant, from which they supplied to the public for hire, electric power for lighting and mechanical purposes; that on said date, the defendants for hire, supplied to H. G. DeSilva & Co. in said City of Pensacola, electric power by means of a certain wire extending from defendants power plant to the planing mill of said H. G. DeSilva & Co., for the purposes of illuminating said mill by and through a certain incandescent light connected with said wire; that on said date it became and was the duty of defendants to supply said electric power to said H. G. DeSilva & Co., in the manner and for the purpose aforesaid, in such manner and in such quantity as would be reasonably safe to those persons who had a right to come in contact with said incandescent light, or the wire by which said incandescent light was attached to the main

wire as aforesaid, and through which the necessary elec-
tricity passed, and to this end it became and was the duty
of the defendant to install a certain cut out or fuse, in
good condition and properly equipped and to keep the
same in good condition and properly equipped for the
purpose for which it was installed, at a point on the main
wire leading from defendants power plant to said incan-
descent light, between the point where said main wire en-
tered the planing mill of said H. G. DeSilva & Co., and
the point where said incandescent light was located, the
purpose of which being to prevent an excessive and dang-
erous quantity of electricity from passing from defend-
ants power plant to said incandescent light, by means of
the main wire and wire by which the incandescent light
was connected with said main wire as aforesaid, but not-
withstanding its duty in this behalf the defendants care-
lessly and negligently allowed the said cut out or fuse to
get out of good condition and to become improperly equip-
ped for the purpose for which it was installed and to there-
by permit a dangerous and excessive quantity of electric-
ity to pass from defendant's power plant to said incandes-
cent light, and the wire by which it was connected as afore-
said by means of the main wire leading from defendants
power plant to said incandescent light; that on said date,
by reason of defendants carelessness and negligence as
aforesaid, the said incandescent light, and the wire by
which it was connected, became excessively and danger-
ously charged with electric current from the defendants
power plant as aforesaid, thereby endangering the lives of
persons who had a right to come in contact with said in-
candescent light, and the wire by which it was connected,
that on said date Charles W. Sutherland, plaintiff's law-
ful husband, who was then and there in performance of
his duties as brick layer performing certain work for the
use and benefit of said H. G. DeSilva & Co. came in con-

tact with said incandescent light and the wire by which it was connected to the main wire as aforesaid, as he had a right to do, whereby he was severely shocked by the electric current supplied by defendants in such negligently excessive and dangerous quantity as aforesaid from the effects of which he died.

And plaintiff claims $35,000.00."

The suit was dismissed as to the Pensacola Electric Company.

A plea of not guilty was filed by the defendant, and on trial a verdict was found and a judgment entered for the plaintiff for $16,120.00 as principal and the further sum of $766.59 as interest thereon, together with her costs herein expended and now here taxed at $5.49 by the Clerk. This judgment is here for review on writ of error.

*Blount & Blount & Carter,* for Plaintiff in Error;

*J. P. Stokes* and *R. P. Reese,* for Defendant in Error.

HOCKER, J., (*after stating the facts.*)—The first and second assignments of error are based on the refusal of the defendant's motion to strike out or amend the fifth count of the declaration upon the grounds that same is so framed as to prejudice, embarrass and delay a fair trial of this action, because the allegations of negligence are so general the defendants are not advised what particular acts of omission or commission will be attempted to be proven. It is admitted that the granting of such a motion rests in the legal discretion of the court, and its action will not be reviewed unless the interest of justice requires it. In this case we think it sufficient to say that the plaintiff in her briefs, while claiming that the Circuit Judge committed no error in his ruling, yet insists that

all of her proof in the trial court was directed and con-
fined to the specific acts of negligence set up in the other
counts, and hence that the defendants were not surprised
and suffered no injury.   We therefore think it unneces-
sary to discuss these assignments as we are not referred
to any evidence which does not properly come under the
allegations of the other counts.

The third, fourth and fifth assignments of error ques-
tion rulings of the court admitting evidence as to the
number and ages of the living children of the plaintiff
and her deceased husband.   It is admitted that it is
proper for the widow to prove there was a family, but the
contention is that there is a limit to such testimony, and
that she should not be permitted to prove its size and the
ages of its members, because this would tend to an in-
quiry as to the life expectancy of its members, the state of
health of each, and other matters, thereby wandering off
into the particulars of collateral matters, and laying the
foundation for exciting the sympathies of the jury.   The
only case cited in support of this contention is Louisville
& N. R. Co. v. Collinsworth, 45 Fla. 403, 33 South. Rep.
513.   In the cited case the action was brought, not by a
widow for damages caused by the negligent killing of her
husband, but by an employee to recover damages for per-
sonal injuries to himself, and it was held that evidence
as to the size of his family was incompetent.   In the case
of Florida Cent. & P. R. Co. v. Foxworth, 41 Fla. 1, 25
South. Rep. 338, there is a learned and exhaustive discus-
sion by Mr. Justice CARTER of the damages which a widow
may recover for the negligent killing of her husband—all
the matters which a jury may take into consideration in
estimating her damages are therein set forth.   Among
other elements of damage it is there said:   "And they
may also consider his services in assisting her in the care

of the family, if any." We do not perceive how the jury could fairly consider this element of damage unless they were advised of the size of the family, that is to say, of the number of children, if any, and of their respective ages, for in no other way could the jury be made to comprehend the nature of the assistance which the husband could render in caring for them. More aid would be expected from him if the children were young and comparatively helpless than if they were of an age to help themselves. This seems to be law established by the courts of States in which the statutes are similar to ours. 6 Thompson on Negligence, sections 7134, 7135; Abbott v. McCadden, 81 Wis. 563, 51 N. W. Rep. 1079, 29 Am. St. Rep. 910; English v. Southern Pac. Co., 13 Utah 407, 45 Pac. Rep. 47, 57 Am. St. Rep. 772; Tetherow v. St. Joseph & D. M. R. Co., 98 Mo. 74, 11 S. W. Rep. 310, 14 Am. St. Rep. 617; Soeder v. St. Louis, I. M. & S. Ry. Co., 100 Mo. 673, 13 S. W. Rep. 714, 18 Am. St. Rep. 724; Baltimore & P. R. Co. v. Mackey, 157 U. S. 72, 15 Sup. Ct. Rep. 491.

The sixth assignment is based on the ruling of the court permitting the plaintiff to ask Dr. J. Whiting Hargis the following question : "After having examined the body as you stated, and if it were a fact that just at the time or prior to the death of Mr. Sutherland his body came in contact with an electric wire or apparatus conveying electricity carrying 1000 volts or 1500 volts, would that have produced death according to your knowledge of the body and conditions as I stated them?" Dr. Hargis answered the question in the affirmative; but on cross-examination qualified his answer by saying that he understood him to say 1500 or 1800 volts. The objection was made on the ground that there was no evidence.to the effect that Sutherland's body just at the time or prior to his death came

12 Vol 61

in contact with a live wire carrying the voltage stated. There was some evidence tending to show that Sutherland's body came in contact with an electric current sufficient to cause his death, and that the voltage may have been anywhere from 2300 volts to the number sufficient to cause death.

In the case of Baker v. State, 30 Fla. 41, 11 South. Rep. 492, this court held that "Whereas an expert may not be interrogated upon an hypothesis having no foundation in the evidence, it is yet not necessary that the hypothetical case put to him should be an exact reproduction of the evidence, or an accurate presentation of what has been proved. Counsel may present a hypothetical case in accordance with any reasonable theory of the effect of the evidence, and if the jury find that the facts on which his hypothesis or theory of the effect of the evidence is based are not proved, the answer of the expert necessarily falls with the hypothesis." Williams v. State, 45 Fla. 128, 34 South. Rep. 279. Also see Pensacola Electric Co. v. Bissett, 59 Fla. 360, 52 South. Rep. 367.

The eighth assignment of error is based on the giving of instruction No. 2 requested by the plaintiff below. It is as follows: "A company maintaining electric wires over which a high voltage of electricity is conveyed rendering them highly dangerous is under the duty of using the necessary care and prudence at places where others have a right to go, to prevent injury." This instruction is one of the instructions given by the trial court in Jacksonville Electric Co. v. Sloan, 52 Fla. 257, 42 South. Rep. 516. It is said in the briefs of defendant in error that this court approved said instruction in the Sloan case. We can find nothing in the opinion in the Sloan case either approving or disapproving said instruction. It is merely given as one of the instructions in the case.

The contention here is that said instruction was calculated to impress the jury with the notion that the defendant company was responsible for the condition of the electrical apparatus in the DeSilva Mill.

In special instructions numbered 4, 9 and 14 given at the request of plaintiff in error the jury were clearly instructed that if the deceased Sutherland came to his death by reason of defects in the wires and fixtures in the mill of DeSilva Company they should find for the defendant. No possible harm could have resulted to the defendant from this instruction which sets forth a perfectly correct, proposition of law.

Taking up the assignments of error in the order in which they are discussed in the briefs of the plaintiff in error, the next to be considered is the twenty-sixth, which is as follows:  "And where the. person or company furnishing the electric current supplies such current through wires, lamps and other apparatus installed by other parties, then before sending the current through such apparatus, the one supplying the electric current must on his own responsibility make reasonable inspection of the apparatus to see that it is fit for use; but the one furnishing the light does not become an insurer against danger in the use of electric appliances furnished." The contention here is that this charge states an erroneous proposition of law, and one that holds the defendant responsible for defects in, or failure to care for the wires and instrumentalities for supplying light in the DeSilva Mill, even though under its contract with the owners of the mill defendant was merely to deliver the electric current to the owners' wires at the entrance to the mill.  It is also contended that it is contradictory to other instructions given at request of plaintiff in error, viz.: 4, 9 and

180     SUPREME COURT OF FLORIDA.

Escambia County E. L. & P. Co. v. Sutherland—Opinion of Court.

14.  Instructions four, nine and fourteen given at defendant's request are as follows:

"4.   If the jury should find from the evidence that the deceased Charles W. Sutherland, came to his death as the result of an electric shock received by coming in contact with an electric light wire in the mill of DeSilva & Company that the wiring and fixtures of the mill were not under the control of either of the defendants, that neither of the defendants were under obligations to the owners or operators of the mill to keep them in repair, but that obligation rested upon such owners and operators, and that the shock received by the deceased was caused by some defect in the wires or fixtures of the mill, then the jury should find for the defendants."

"9.   If the defendants have produced credible evidence that the wires extending from the electric light plant to the transformer at the DeSilva Mill building and from the transformer to and into the metre in the building were in good order and condition, properly constructed and of proper material, such as are considered standard in the science of electric lighting, and that the transformer was of standard make, and in good condition and properly working at the time of the death of Charles W. Sutherland, then you should find for the defendants."

"14.  If the defendant did not undertake to control or to keep in repair the wires receiving the secondary current situated in the DeSilva Mill, but merely to supply the electric current at the point where its wires and appliances were attached to the system of lighting wires situated in said building, then he cannot be held liable for the death of one working in said building by electric current, if the death was caused by a defect in the wires or instrumentalities situated in said building over which

they did not undertake to exercise control or the right of repair."

In this connection the whole of the charge of the court must be considered. The judge of his own motion charged the jury as follows: "Persons and corporations who furnish electricity commercially to the public for lighting and mechanical purposes are held to a high degree of care in the handling of the electricity they may supply. It is a dangerous agent, liable to do damage to persons and property, and the law requires that in the handling and furnishing of the electricity to persons and corporations, should it handle it and furnish it to other people, must use the highest degree of care and diligence to avoid injury to others, commensurate with the business and its surroundings, of course, the degree of care is not so high as to render it impossible to furnish it at all, for fear somebody might get hurt, but it is the highest degree of care which it is possible, commensurate with the business in which they are engaged. That duty extends to the control of the electricity from the plant where it is manufactured until it is delivered to the customer, wherever that point may be," &c.

Considering the instructions given at request of plaintiff in error, and the whole charge of the court bearing on the point, and the fact that there was no evidence of any defect in the electrical apparatus in the DeSilva Mill, and no contention here that there was any, it does not seem to us that the portion of the charge here objected to could reasonably have produced the effect contended for by it. It was simply intended to state a general proposition of law, and its application was restricted by the other instructions and other portions of the court's charge. We find no reversible error under this assignment.

182    SUPREME COURT OF FLORIDA.

Escambia County E. L. & P. Co. v. Sutherland—Opinion of Court.

The ninth assignment of error complains of instruction No. 3 given at request of the plaintiff. It is as follows: "Corporations act and perform their duties through the agency of their servants and employees. Where it is the duty of a corporation to perform an act, and the authority to do that act is imposed upon one of its employees, such employee stands in the place of and as ·a representative of the corporation, and the corporation is responsible for the negligence of the officer or agent charged with the performance of such duty." There is no contention here that this instruction does not state a correct proposition of law. It was given in the trial of Jacksonville Electric Co. v. Sloan, *supra*, and not passed on by this court. But it is urged that there is no "evidence that any agent or employee of defendants had performed or omitted to perform an act claimed to be negligent resulting in the death of Sutherland, but that there was evidence that an employee of DeSilva Company, Mr. Lyle, had given Sutherland the lamp and cord which plaintiff claims killed the deceased, and that Lyle turned off the current, and put it on again before Sutherland's body was taken from the boiler setting," and that the jury would under the charge naturally hold defendants liable for the defaults, if any, of employees of DeSilva Company. So far as we can discover from a consideration of the whole case, there is no contention by the defendant in error (the plaintiff below) that any negligent act whatever of Lyle or any other employee of DeSilva Company caused the death of Sutherland. There is not the slightest proof that any part of the electrical apparatus in the DeSilva Company Mill was out of order or defective for the uses for which the apparatus was designed, viz.: to handle a current of electricity not exceeding 220 volts, and we are unable to · see the force of the contention of the plaintiffs in error.

The contention of the defendant in error is that there was negligently sent from the transformer of defendants into the DeSilva Company Mill a greater current of electricity than 220 volts, which caused the death of Sutherland. We find no reversible error under this assignment.

The tenth and twenty-fifth assignments of error are argued together in the brief of plaintiff in error, and we shall consider them together. The tenth assignment is based on instruction No. 5 given at request of the plaintiff, and is as follows: "Though electricity is the most powerful and dangerous element known to science, it has become part of the commercial, industrial, business and domestic life of the world, it can neither be seen or heard, and is as deadly as it is invisible and silent; but though such are its qualities, the same science that discovered it can control it in the endless variety of uses to which it has been put, and neither death nor danger need be encountered from it if properly guarded against by those whose duty it is to have it safely conducted to the points at which it becomes a useful and harmless agency."

The twenty-fifth assignment is taken from the charge given by the court, and is as follows: "Electricity is a dangerous agent, but experience has demonstrated that it can be controlled so as to be safely supplied to the public for lighting purposes, and it is the duty of persons and corporations undertaking to supply electricity for lighting purposes, to supply the premises through lamps, wires and other apparatus, so constructed and installed as to safeguard persons who may come in contact with any part of such system, from dangerous electric shocks, and in the discharge of such duty the one furnishing the light must exercise a practicable degree of care, skill and diligence in the construction and maintenance of its plant and appliances." In this connection we must of course

consider the whole charge of the court, and particularly that part referred to in considering assignment No. 26, together with the instructions given at request of plaintiff in error. It is contended here by plaintiff in error that both of these instructions are argumentative, particularly the first, and the natural effect of the speculative arguments made in each of them would be to impress upon the jury that the defendants were to be held liable as insurers, for if science has discovered methods of using electricity which can so perfectly control it that no danger need be encountered in its use, then it follows that if one is injured by electricity, it is because proper methods have not been used by those furnishing the electricity to prevent the injury, and they are therefore guilty of negligence because a person has been injured. It is difficult to evade the force of this reasoning, especially as to the first instruction. It is contended, however, by the defendant in error that the charge is taken literally from the opinion of the court in the case of Alexander v. Nanticoke Light Co., 209 Pa. St. 571, 58 Atl. Rep. 1068. This language does occur in the very beginning of the argument which the court uses to develop the standard of duty of an electric light company furnishing electricity to its patrons, but this language was subsequently in the same opinion qualified by the court, which says: "But this is not to be understood that the company became an insurer to its patrons against all danger in the use of its electrical appliances on his premises, but simply that it had contracted with him to protect him from injury by exercising the highest degree of care, skill and diligence in the construction and maintenance of its plant and appliances." The doctrine thus qualified is set forth as the law in the first head note of the opinion. It is an improper practice to take the argument of a court, or

portion of it, employed by it to develop a principal of law, and use it as a statement of the legal principal itself, in instructions to a jury. Long v. State, 44 Fla. 134, text 139, 32 South. Rep. 870. The question then presents itself whether the error thus committed was cured by other instructions which properly stated the standard of duty applicable to an electric light company furnishing electricity to patrons. To state in one part of a charge to the jury that which makes a company furnishing electricity to its patrons a practical insurer of the safety of those patrons, and to state in another part of the charge that such company is not an insurer, is to state contradictory or repugnant propositions, and a charge containing contradictory propositions is universally held to be reversible error, unless the evidence is such that the jury could not have been misled. 11 Ency. Pl. & Pr. 145. This principle of law is based on the fundamental law of thought called "excluded middle," that is, that of two contradictory or repugnant propositions, one or the other must necessarily be false. There is no middle ground between such propositions and no rational way of harmonizing them. They are necessarily misleading and confusing when presented to a jury, and we are unable to say the plaintiff in error was not prejudiced by the instruction we have been considering. Danford v. State, 53 Fla. 4; Meyer v. Wilkins, 37 Fla., 244; A. C. L. R. Co. v. Crosby, 53 Fla., 400; Davis v. State, 54 Fla., 34.

The charge complained of in the 25th assignment of error, though argumentative, is not quite so objectionable as the one just considered. We think, however, it could be very well omitted in stating the law of the case to the jury.

Assignments numbered eleven, twelve and twenty complain of instructions Nos. 6 and 7 given at request of

defendant in error, and a part of a sentence in the judge's charge. Instruction No. 6 is as follows: "Where a person has a right to handle an electric light, handles an electric light lighted by electricity supplied by an electric light company, the high standard of duty of the company is that it must, in the operation of its plant protect such persons from the perilous current which is the basis of the business, by doing all that human care, skill and vigilance can suggest."

Instruction No. 7 is as follows: "The degree of care, prudence and, oversight required of an electric company, when it embarks in a business so menacing to life and safety is that it ought to use that degree of care that is commensurate with the danger it creates. It must know whether its appliances are reasonably safe and in order. It will not be allowed to turn loose such deadly agency without first taking every reasonable precaution to prevent its injuring those, among whom it is sent, or else it must bear the consequences of such failure. It is the duty of the company supplying electricity both to provide such appliances as are reasonably safe, and by proper inspection and oversight to keep itself informed as to whether they were safe."

The part of the charge complained of in the twentieth assignment is as follows: "And they must in furnishing it do so through wires for lighting and lamps, and other apparatus which are efficient to deliver the electricity in proper quantities and so control and distribute it as not to be dangerous to persons who properly come, or may come in contact with the lamps and wires." The first part of the sentence is as follows: "That duty extends to the control of the electricity from the plant where it is manufactured until it is delivered to the consumer wherever that point may be." It seems to us the

court might very well have left out the words "and lamps" after the word "lighting." In this case the defendant company engaged to furnish the electricity to the DeSilva Mill Company to be used in its mill in its own lamps. We cannot discover what the defendant had to do with the efficiency of the lamps in the mill. The contention of defendant in error is that Sutherland was killed by an excessive voltage of electricity carried into the mill by a defective transformer, and not because of any defect in the lamp which he was handling.

The sixth instruction is taken literally from the head-note in Alexander v. Nanticoke Light Co., *supra.*

Instruction No. 7 is adopted with some little change of phraseology from the opinion in the case of City of Owensboro v. Knox's Adm'r, 116 Ky. 451, 76 S. W. Rep. 191. The headnote in that case states the law as follows: "Where a municipal corporation owned and operated an electric plant the degree of care required in the maintenance of its wires for the distribution of electricity was not the same as that required to the safe condition of its streets, but it was bound to know whether its appliances were reasonably safe, and to keep them in a *reasonably* safe condition." In this case a child fourteen years old while passing along a street of the city inadvertently and innocently came in contact with a guy wire running from the top of a pole along which were strung the wires for conducting the electric current to a short post set near the sidewalk. By imperfect insulation or other neglectful failure to keep the wires from coming in contact, the guy wire became charged with a heavy current of electricity. The child was severely shocked and burned. On this state of facts the law was laid down as stated.

The many cases cited by the defendant in error in her brief, illustrates the great difficulty of putting into a

harmonious formula of words a definition of the duty which an electric company owes to its patrons. So far as we can discover the definition of the Pennsylvania court given in instruction No. 6, stands alone.

In the case of Jacksonville Electric Co. v. Sloan, *supra*, the opinion and syllabus were written by the writer of this opinion. In the 13th headnote it is stated: "Electricity is an invisible force highly dangerous to life and property, and those who make, sell, distribute and use it are bound to use care in proportion to the danger involved." On page 289, it will be seen that this rule was taken from 2 Cooley on Torts, p. 1492. We there said: "We do not deem it necessary to go into an examination of the numerous cases illustrating and enforcing the foregoing principles. Whatever qualifications they may have, have no application to the facts of this case. Applying them to the facts which we have heretofore stated the evidence tended to prove we cannot doubt that it was the duty of the defendant to use reasonable care to see that the current of electricity was not turned upon the wire while the employees of the defendant were working upon it in order to splice it. The evidence does not show that any care or precaution of any sort was taken by the defendant." In this case, then, reasonable care was stated as the measure of the duty.

In Joyce on Electricity, section 445, it is said: "A company maintaining electric wires over which a high voltage of electricity is conveyed, rendering them highly dangerous to others, is under the duty of using the *necessary care and prudence* at places where others may have the right to go, either for work, business or pleasure, to prevent injury. It is the duty of the company, under such conditions, to keep the wires perfectly insulated, and it must exercise the *utmost* care to maintain them in

VOL. 61, JANUARY TERM, 1911.    189

Escambia County E. L. & P. Co. v. Sutherland—Opinion of Court.

this condition at such places." In section 445 e, it is said under the subject of "Defect or break in transformer:" "Injuries of this character are frequently, if not generally caused by some defect or break in the transformer, an appliance by which a current of high voltage is transformed into currents of lower voltage before it is carried into buildings. By such defect or break the current in the primary wire enters the secondary wire and thus a cur rent of excessive voltage is carried into a building, in many instances causing serious injury or death to the occupant. The company is not an insurer against all accidents or injuries which may result from such a cause, but if it knew or could have known by the exercise of *reasonable care and caution* of such defect or break and could by repairing the same, or by other means have prevented the accident, then it will be liable for the injury."

In the case of Denver Consol. Electric Co. v. Lawrence, 31 Colo. 301, 73 Pac. Rep. 39, the rule is laid down that the Electric Company must "do all that human care, vigilance and foresight can reasonably do, consistent with the practical operation of its plant, to protect those who use its electric light." This is a case bearing some analogy to the one at bar. Other courts express the duty of an electric company by such phrases as "a high degree of care commensurate with the danger;" "the highest degree of care that skill and foresight can attain consistent with the practical conduct of the business, under the known methods and the present state of the particular art." Denver Consolidated Electric Co. v. Walters, 39 Colo. 301, 89 Pac. Rep. 815, 9 Am. Elec. Cas., 1013-1020. Also in the same volume, 9 Am. Elec. Cas. 687, in the case of Morhard v. Richmond Light and Railroad Co., 111 App. Div. 353, 98 N. Y. Supp. 124, it is said: "An Electric Light Company furnishing current for lighting buildings

is bound to exercise a 'high degree of care' to protect persons using such current." In Mangan's Adm'r v. Louisville Electric Light Company, 122 Ky. 476, 91 S. W. Rep. 703, 9 Am. Elec. Cas. 692, it is said that those who manufacture and use electricity must exercise the utmost care to protect others from danger, and in the opinion it is said that by utmost care and skill is meant the highest degree of care and skill known, which may be used under the same or similar circumstances. It will thus be seen that a variety of phraseology is used by the courts to define the duty of an electric light company furnishing light to its patrons. There is a practical unanimity upon the point that such a company is not an insurer. From a consideration of the cases it seems that a proper rule of duty of an electric company furnishing light to its patrons may be expressed by saying "that such a company while not an insurer against all possible accidents to those whose right or duty it is to use its electricity, yet it is under obligation to do all that human care, vigilance and foresight can reasonably do, consistent with the practical operation of its plant to protect those who use its electricity." We think that instruction No. 6 which is complained of goes beyond this definition, and comes very near making an electric light company an insurer.

Instruction No. 7 is not so objectionable, but it is somewhat argumentative, having been taken from the body of the opinion of the Kentucky court, where it is arguing out to a demonstration the duty of the electric company.

In the 13th assignment of error the plaintiff in error complains of the 9th instruction given at the request of defendant in error. It is as follows: "If an arc was formed in the transformer by reason of a defect in the coils therein, which was due to the negligence of defendants, and on account thereof Sutherland was killed, his

VOL. 61, JANUARY TERM, 1911.    191

Escambia County E. L. & P. Co. v. Sutherland—Opinion of Court.

widow is entitled to recover." The contention here is that "there is no evidence upon which to base it;" that all the evidence without contradiction showed the transformer was in perfect order. It is true that defendant proved that immediately after the death of Sutherland the transformer was tested with an instrument called a "magneto" and that by this test it was shown to be in perfect order. Defendant's testimony also tended to show that the "magneto" was the instrument in general use for testing transformers. But there was also testimony tending to show that transformers were like all human mechanisms, liable to get out of order. The transformer is an iron box or chest used to transfer, from the primary wires carrying a large voltage, to the secondary wires, a smaller voltage, which is used for lighting purposes. These wires are wrapped around an iron core, the primary wire first, and then the secondary wire over or between the first. Both wires are or should be insulated. A certain kind of oil is poured over the iron core and wires so as to cover them. The purpose is to prevent the heating of the wires, and to aid insulation. When the oil is low it is possible for the full primary current to arc or be transmitted from the primary to the secondary wires, and this sometimes occurs. If the oil is above an arc which has formed in the transformer, it will break the arc when the current is shut off in the secondary wires. It also tends to prevent the forming of an arc. Heating of the secondary wires in the transformer tends to break down the insulation. There is evidence tending to show that the oil in transformers should be renewed. It is possible for the full primary current to arc or be transmitted from the primary to the secondary wires in the transformer when the oil is shortened or low—that does occur sometimes. There was evidence tending to show that the transformer

here involved had been in use by the defendants since 1906; that it was a second-hand one when put in, and there is no evidence that it had ever been opened in that time to see whether the oil was still in it, or to see whether the insulation of the wires was perfect. There is evidence tending to show that Sutherland was killed by electricity in the DeSilva Mill, while using an ordinary incandescent light. And there is evidence tending to show that if he was killed by electricity his death must have been caused by a defect in the transformer which permitted the heavy voltage of the primary wires to pass over into the secondary wires. We say there is evidence tending to show these things—though there is much conflict in the evidence on these points. It is impossible to set out in full all of the evidence on these points because it covers a great many pages of the record. Under these circumstances we cannot affirm there is no evidence affording a basis for the charge here assigned as erroneous.

Assignments 23 and 24 are based on a part of the charge of the court covering about one page. The contention is that these portions of the charge make the defendants responsible for the condition of the wiring and apparatus in the DeSilva Company Mill. We have carefully read these portions of the charge and we can discover no foundation for these assignments, when all of the charge and all of the instructions are considered together.

The charge complained of in the 22nd assignment is alleged to be confused and misleading. It is as follows: "By a preponderance we mean the greater weight of the evidence, not necessarily the greater number of witnesses but the weight of the evidence—just as if you had a scale which would weigh the testimony—you put all the testimony for one side in one scale or balance, and all the testimony for the other side on the other balance or side,

and whichever side went down, then that would be the side having the preponderating weight of the evidence." It is objected that the charge does not instruct the jury to weigh only the credible testimony and it is insisted that the jury should not only find upon which side the weight of testimony lies, but should be reasonably convinced by that testimony of the facts necessary to a recovery in order to find a verdict for the plaintiff. Three cases are cited in support of the contention: Life Association of America v. Neville, 72 Ala. 517; Alabama Mineral R. Co. v. Marcus, 115 Ala. 389, 22 South Rep. 135; Guinard v. Knapp-Stout & Co. Company, 95 Wis. 482, 70 N. W. Rep. 671. We understand from these cases that a mere preponderance of the evidence does not necessarily afford a basis for a verdict. The jury must have a reasonable belief that the facts essential to the cause of action have been established before they can justly render a verdict for the plaintiff, and there might well be a preponderance of the evidence in favor of the plaintiff which would yet not be sufficient to produce a reasonable belief in the jury of the truth of the facts involved in his claim, and they might well have more belief of the truth of the evidence in support of plaintiff's case, than of the truth of that adduced to the contrary, and still not attain that degree of belief of its truth that would require a verdict for the plaintiff. We are here afforded another instance of the difficulty of putting into a perfectly satisfactory formula of words a definition satisfactory to acute and analytical minds. It is certainly true that the evidence should not only preponderate in favor of the party receiving the verdict, but that the evidence should produce in the minds of the jury a reasonable belief of the facts essential to the verdict. But to require of a Circuit

13 Vol. 61

Judge that kind of logical accuracy that is not employed generally by the ablest lawyers, is requiring a little more than is reasonable. As an illustration of this the distinguished attorneys who represent the plaintiffs in error requested a large number of instructions, a dozen of which were given. Instruction No. 6 is as follows: "The burden of proof is upon the plaintiff to prove by a *preponderance of the evidence* that the death of Sutherland," &c. Nothing is here said about a preponderance of the evidence, producing reasonable satisfaction or conviction, &c. Again in instruction numbered 15 the plaintiff in error requested the Judge to charge the jury "the burden of proof is upon the plaintiff to prove by a *preponderance of evidence* that such death was produced by an electric shock." Nothing is here said about a preponderance of the evidence producing satisfaction or conviction. The same expression occurs again in another part of the same instruction, and in instruction No. 12 which was refused. Inasmuch as in the charges and instructions taken as a whole the jury were instructed that they must find every fact essential to a recovery by a preponderance of the evidence, we are not disposed to subject the charge complained of to a microscopic criticism, though it is proper to say that it would be better to instruct the jury, without undertaking to enter into a discussion of what is meant by preponderance—that in order to find a verdict for the plaintiff the evidence upon every point essential to his recovery must so preponderate in his favor as to produce in the minds of the jury a reasonable belief as to the plaintiff's right of recovery.

The seventeenth and eighteenth assignments complain of the refusal to give the twelfth and seventeenth instructions requested by the defendant below.

Instruction number twelve is as follows:

VOL. 61, JANUARY TERM, 1911.        195

Escambia County E. L. & P. Co. v. Sutherland—Opinion of Court.

"Unless the jury can find from a preponderance of the evidence that the death of Charles W. Sutherland was caused by an electric shock and further that defendants, or one of them were negligent and by such negligence, the electric shock which killed Sutherland, if he was killed by such shock, was produced or caused, they cannot find a verdict for the plaintiff against either defendant."

Instruction number seventeen is as follows:

"If the jury should find that the death of Sutherland was produced by electricity, but the evidence should leave it uncertain whether the defendant, or either of them were negligent, or if it should show that there were two or more acts of commission or of omission either of which might have caused the current to kill Sutherland, for some of which the defendants were responsible and for others they were not, and the evidence leaves it uncertain which of such acts caused the injury, then the jury should find for the defendants."

It is contended that the twelfth instruction should have been given because it required the jury to find from a preponderance of the evidence, the death of Sutherland from an electric shock and that this shock was caused by defendants negligence. We think that instruction number twelve was amply covered by the general charge of the court, and by several instructions given at the defendants request—particularly instruction number fifteen.

It is contended that the seventeenth instruction should have been given "because even though the death from electricity was proved, still if it was uncertain whether the death was caused by a negligent act, or whether though so caused the defendants or the DeSilva Mill Company were responsible for that act, the verdict should have been for the defendant.

So far as we have been able to discover, there was no

evidence tending to show that Sutherland's death was caused by any negligent act of the DeSilva Mill Company, and we think this instruction was substantially covered by other charges and instructions which were given. Undoubtedly there must be some limitation to refinements in the administration of law—or else it would become impracticable to administer it, through ordinary human instrumentalities. In this case the jury were fairly loaded down with charges and instructions. The charge of the court covers nine pages of the record, and the instructions given cover seven pages.

All that is said about assignment number sixteen is "It was likewise error to refuse the instruction mentioned in the sixteenth assignment." We do not think that this remark can be regarded as an argument of that assignment.

The only other assignment of error which is argued questions the sufficiency of the evidence to support the verdict. Upon this, it is only necessary to say that in view of the condition of the evidence, we are not able to say that the errors we have pointed out in defining the duty of defendant towards its patrons were harmless.

The judgment is reversed and a new trial awarded.

TAYLOR and PARKHILL, J. J., concur;

WHITFIELD, C. J., and SHACKLEFORD and COCKRELL, J. J., concur in the opinion.