as Henry B. Heylman had interposed an answer, and, while evidence against him, were incompetent against the appellant, and their admission did not tend to prove any fact which the plaintiff was bound to establish as against the appellant. As these declarations of Henry B. Heylman were the only evidence to sustain the plaintiff's cause of action, I think, as against this appellant, the complaint should have been dismissed. I therefore dissent.

McLAUGHLIN, J., concurs.

(111 App. Div. 353)

## MORHARD v. RICHMOND LIGHT & R. CO.

(Supreme Court, Appellate Division, Second Department. March 16, 1906.)

1. NEGLIGENCE—PERSONAL INJURIES—PROXIMATE CAUSE—PROOF.

    In an action for death by wrongful act, plaintiff must make it appear with reasonable certainty that the injury was inflicted as the result of defendant's negligence, and the jury cannot be permitted to arrive at a verdict by speculation or guesswork.

    [Ed. Note.—For cases in point, see vol. 37, Cent. Dig. Negligence, §§ 267, 273.]

2. ELECTRICITY—NEGLIGENCE—PERSONAL INJURIES—EVIDENCE—QUESTION FOR JURY.

    In an action against an electric light company for the death of a person alleged to have been killed by coming in contact with a wire which defendant had negligently allowed to become charged with a dangerously high voltage, evidence *held* to justify submission to the jury of the question of defendant's negligence.

    [Ed. Note.—For cases in point, see vol. 18, Cent. Dig. Electricity, § 11.]

3. SAME—DUTY TO EXERCISE CARE.

    An electric light company maintaining wires charged with a voltage so high as to be deadly is required to exercise a high degree of care to protect persons using the current for domestic lighting.

    [Ed. Note.—For cases in point, see vol. 18, Cent. Dig. Electricity, § 7.]

4. DEATH—DAMAGES—EXCESSIVENESS.

    In an action for negligence causing the death of a dentist 37 years old, having a family of four children and earning an income of from $17,000 to $20,000 a year, a verdict for $40,000 was not excessive.

    [Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Death, §§ 125–130.]

Appeal from Trial Term, Kings County.

Action by Anna C. Morhard, as administratrix of Francis Louis Morhard, deceased, against the Richmond Light & Railroad Company. From a judgment for plaintiff, and from an order denying a motion for new trial, defendant appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, RICH, and MILLER, JJ.

Frank Harvey Field, for appellant.

Herbert C. Smyth (Millard F. Tompkins, on the brief), for respondent.

RICH, J. This appeal is by the defendant from a judgment in plaintiff's favor for $40,000 for damages alleged to have been sustained

in consequence of the killing of plaintiff's intestate. His death was caused, it is alleged, by his body coming in contact with a 2,400 voltage current of electricity, which was negligently permitted to flow into the residence of the deceased by the defendant. At the time of the accident defendant was engaged in the business of supplying electricity to various customers at Giffords, in the county of Richmond, of whom the deceased was one. The electric current of 2,400 volts was delivered to a transformer placed upon a pole in front of his residence by two primary wires carrying an alternating current. The office of the transformer was to reduce the 2,400 voltage of the primary circuit to 120 volts, and deliver this voltage of 120 to deceased's residence over a secondary circuit, consisting also of two wires running from the transformer.

The case was tried by plaintiff upon the theory that the transformer was in an imperfect condition, and that because of this condition a deadly voltage of electricity was permitted to pass over the pole of the secondary wire. Plaintiff's intestate was a strong man. He went into his cellar in perfect health, and was dead when found lying upon the cellar floor about an hour later. An electric lamp, suspended by an insulated cord, was lighted. His position was such as to indicate that he had fallen while engaged in lighting this lamp. It was suspended from a nail in the ceiling, to which also was attached a wire hanging down, supporting a swinging shelf. There was a burn between the fifth and sixth rib on the left side of deceased's body, and there was also directly over this a small hole burned in both the outer and under shirt worn by him at the time. Evidence was introduced tending to show that there was a burn on his left foot, and also a burn in the stocking and slipper directly over this burn. The burden of establishing that the accident was the result of defendant's negligence, and that plaintiff's intestate was free from contributory negligence, was upon the plaintiff, and the verdict will not be sustained unless plaintiff has made it appear with reasonable certainty that the injury was inflicted as a result of defendant's negligence. A jury cannot be permitted to arrive at a verdict by speculation or guesswork. Menzies v. Interstate Paving Co., 106 App. Div. 107, 94 N. Y. Supp. 492. It appears that the wire attached to the droplight was defective, and not properly insulated at the point where it came in contact with the wire sustaining the swinging or hanging shelf. This wiring was put in the house and maintained by the deceased, but was only intended to carry a voltage of 120, which was harmless. Defendant contends that it is more reasonable to suppose that deceased met his death as the result of injuries sustained by falling from a small box standing directly in front of the shelf, and that it is at best but a guess as to whether his death was caused by an electric shock or a broken neck occasioned by the fall. If this is correct, of course the verdict cannot be sustained. It has been held repeatedly, and is the law of this state, that where the damages have been inflicted by one of two causes, for one of which the defendant is responsible and for the other of which he is not responsible, the plaintiff cannot succeed where it is just as probable that the damage was done by one cause as by the other. But is the learned counsel correct as to the conclusion he reaches? It is true that the

cause of death has not been established to an absolute certainty; no autopsy was held, and Dr. Hutchinson, a witness called by defendant, testified that: "In order to tell if a man has died from electric shock, in the first place an autopsy is necessary to eliminate absolutely every other cause of sudden death." Yet I think the evidence predominates in favor of plaintiff's theory. It appears that on the night of the accident, and at different times at night antedating the accident, the transformer had been observed to have been surrounded by blue lights and sparkling, and that a buzzing noise was at times observed, resembling rapid hammering; that on the evening of the accident a blue light was observed where the primary wires came in contact with the trees. The transformer was taken from the pole by the defendant after the accident, but was produced upon the trial, and evidence is given that it was tested after the accident and worked properly. It appeared, however, that about one-half of an inch of the insulation was gone off the primary wire in the transformer in one place, and that this bare wire was about $9/64$ of an inch from the iron transformer case. The pole to which this transformer was attached was wet. Evidence was given tending to show that 2,400 volts will jump in the open air from one wire to another two-sevenths of an inch away, and the greater the voltage the greater distance the voltage will jump. Expert evidence was given tending to show that the primary current got on the secondary circuit through the transformer, and in support of this theory our attention is called to the fact that, besides the noise and blue light emanating from the transformer, upon the night of the accident blue lights were observed on the secondary wire leading from the transformer to the house; also that lights in the house were unsteady, at times giving a very bright light (brighter than usual), and then that they would go out entirely, which indicated, the experts testified, that the wires were instantaneously short circuited, and that a ground might be effected through the wooden pole, which was wet. Professor Sever testified that these phenomena indicated "that there was some breakdown in the insulation."

The learned counsel for the appellant admits in his argument that if "manifestations of electrical energy, as described by witnesses, came from the secondary circuit, there must have been a high voltage current on the secondary circuit." Evidence was given on the part of plaintiff that standing on the cellar floor, in reaching up to turn on the light, the wires at the point where they were attached to the shelf would touch over the region of deceased's heart. His shirt showed a burn, corresponding with the apex of his heart, where the burn on the body was found. Experts gave it as their opinion that deceased received a shock from a high potential current of nearly, if not the entire, electric force of the primary circuit. It appears, however, that from 200 to 220 volts in the secondary circuit, upon both legs of the circuit, would burn out all lights in the house because of the high potential force. The fact that the lamps did not burn out is explained by an expert, who gives it as his opinion that the voltage was connected with but one leg of the secondary circuit. He says: "The deceased came in contact with one leg of the secondary circuit, and in that way got the entire voltage, or very nearly the entire voltage, of the primary." He

admits that if the primary circuit had been connected to both legs of the secondary that the fuses would have blown, or all the lamps would have gone out. The fact that the lamps did not go out is a positive manifestation that the current—the high potential—did not go on both legs of the secondary circuit. "This is also shown by the fact that only one of the wires—the insulation of one of the wires—is burned off."

I must confess my inability to understand how there could have been any light in the house if the power was not connected with both legs, unless this great potential force was instantaneous. Mr. Southard stated:

"The fact that the lights in the house did not blow out but remained lit indicated, first, that the circuit fuses in the primary did not blow out. From the fact that they did not blow out .when this occurrence took place, why, there was not sufficient amount of current drawn to blow the fuse, and also that the application of the current was not of long enough duration to heat the fuses up sufficiently to blow them. The doctor could have only been in contact a very short space of time, as indicated in the outer shirt—the puncture on the outer shirt, the other shirt, the stocking, and slipper. * * * The burning there would continue after the current was actually through going through his body, due to the fact that woolen will smoulder and will burn."

There was sufficient evidence to warrant the submission of the question of defendant's negligence to the jury. Defendant maintained this primary circuit, charged with an alternating current of 2,400 volts. This was a deadly force, and it was defendant's duty to exercise a high degree of care to protect the deceased from this current. Caglione v. Mt. Morris Electric Light Co., 56 App. Div. 191, 67 N. Y. Supp. 660. It appears that the primary wires were in contact with trees, and that sparks and blue light were observed at the transmitter for some months before the accident, and yet no examination was made of the transformer.

The jury found, after a fair and impartial charge by the learned trial justice, that plaintiff's intestate was killed by reason of a breaking down of the transformer, which permitted the high potential force of electricity to enter the house of the deceased; that this was due to the negligence of the defendant; that deceased was free from any negligence which contributed to his death; and the verdict is supported by the evidence. Deceased was 37 years of age at the time of his death. He was a dentist, and his income from his dental profession was shown to have been from $17,000 to $20,000 a year. He left three children, the eldest being eleven years of age, besides a posthumous child born six months after his death. We do not think the verdict was excessive under the circumstances.

The exceptions have been examined with care, and we find none warranting a reversal.

The judgment and order must therefore be affirmed, with costs. All concur.