Albert BANKS, Plaintiff-Appellee,

v.

CENTRAL HUDSON GAS & ELECTRIC CORPORATION, Defendant-Appellant and Plaintiff-Appellee,

NINNIE BROTHERS, Third-Party Defendant-Appellant.

No. 137, Docket 23286.

United States Court of Appeals
Second Circuit.

Argued Feb. 8, 1955.

Decided July 6, 1955.

Melvin Sacks, New York City (Benjamin H. Siff, New York City, of counsel), for plaintiff-appellee.

Garvey & Conway, New York City (George A. Garvey, New York City, of counsel), for defendant-appellant and third-party plaintiff-appellee.

Frederick Mellor, New York City (Joseph F. Hanley, New York City, of counsel), for third-party defendant-appellant.

Before CLARK, Chief Judge, HINCKS, Circuit Judge, and SMITH, District Judge.

HINCKS, Circuit Judge.

Albert Banks sustained severe injuries by electric shock when the boom of a crane came in contact with overhead wires carrying high voltage electric current. Banks sought recovery against the owner of the wires, Central Hudson Gas & Electric Corporation (hereinafter called "Central"). Central impleaded Ninnie Brothers (hereinafter called "Ninnie"), Banks' employer and the owner of the crane. In the third-party complaint Central alleged that it is entitled to indemnity from Ninnie in the event that Central is held liable to Banks. Federal jurisdiction was based on diversity of citizenship and amount in controversy.

The action was tried to a jury which returned a verdict of $85,000 in Banks' favor. On the third-party complaint, the jury, finding that Central was only "passively" negligent, awarded it recovery over against Ninnie, who, as it was found, was "actively" negligent.

From the judgment entered on the jury verdict, both Central and Ninnie bring this appeal. Both appellants claim that Banks was contributorily negligent and Central contends that the finding of negligence on its part was contrary to the weight of the evidence. Ninnie contends that its motion made at the close of the evidence to dismiss the third-party complaint was erroneously denied. Ninnie also complains of the trial judge's charge to the jury and of his admission of a certain document in evidence.

The facts of this case are as follows: Ninnie entered into a contract with the Atlas Company to construct a building on the west side of South Avenue, Beacon, New York. Banks, at the time of his injury, was working for Ninnie on the South Avenue project.

Central learned of the project nine months before it was commenced. Long before the accident it knew that the building was to be located on the west side of South Avenue and that heavy machinery, including a 40-foot crane, would be utilized in connection therewith. In view of this information Central decided to move its wires from the west side of South Avenue to its east side. Throughout the process of construction, Central's overhead electric wires, carrying 13,800 volts, were located on the east side of the street some 50 to 60 feet distant from the building under construc-

tion. The wires were strung on poles 40 feet above the street. As such they were 20 feet above the minimum height as required by regulations. The wires were uninsulated and there was evidence establishing that, although proper insulation would have prevented the injury in this case, industrial practice and government regulations did not require the insulation of wires maintained, as these were here, high above the ground. The wires were not de-energized to accommodate Ninnie although Central maintained switches at various points along its line so that the power could be turned off in appropriate circumstances. If this had been done a village of 1,000 inhabitants including a hospital would have been deprived of electricity. If the wires had been de-energized, of course, this accident would not have occurred.

Central never warned Ninnie that the wires were uninsulated and carried high voltage electric current. It failed to post warning signs in the vicinity of the construction site. Prior to the accident, while engaged in a conversation with an officer of the Atlas Company, one of Central's engineers observed the close proximity of Ninnie's crane to the overhead wires and mentioned the likelihood of injury if the boom of the crane passed too near the wires. But Central never directly communicated this warning to Ninnie or its employees working on the project.

Ninnie had been collecting quantities of metal blocks for use in the construction project. These were ordinarily kept on the west side of the street, but a day or so before the accident, Ninnie moved a few of them to a location on the east side of the street under Central's wires. Banks was in contact with one of the few blocks so situated when he was injured. The injury occurred when the boom of Ninnie's crane came in contact with Central's wires: the current of electricity passed from the boom down the cable of the crane to the metal block which was attached to the crane. The presence of the block on the east side of the street occasioned the swinging of the crane near the overhead wires. Although, as already noted, Central had known that a 40-foot crane would be in use on the project, all the testimony was that it had never known that the metal blocks had been placed on the east side of the street under its wires.

There was evidence establishing that it was Ninnie's constant practice to maintain a signalman to direct the workers' attention to the movements of the crane. It is undisputed that Banks was not warned of the crane's movement on the occasion of his accident.

■ Both Ninnie and Central contend that on the evidence Banks was contributorily negligent as a matter of law. In view of Banks' testimony that (1) he had no knowledge that these particular wires were dangerous in any way, and (2) that, while engrossed in his work, he was relying on a signalman for directions (which were never given) as to the movement of the crane, we think the issue of his contributory negligence was for the jury. Braun v. Buffalo General Electric Co., 200 N.Y. 484, 94 N.E. 206, 34 L.R.A.,N.S., 1089; Underhill v. Major, 220 App.Div. 173, 221 N.Y.S. 123, affirmed 247 N.Y. 525, 161 N.E. 168; Ward v. Clark, 232 N.Y. 195, 133 N.E. 443; Nicholson v. Greeley Square Hotel Co., 227 N.Y. 345, 125 N.E. 541. The jury resolved this issue, as on the conflicting testimony it could properly have done, against the appellants.

The evidence clearly indicates that to facilitate the construction Central moved its wires across the street and maintained them at a height twice that required by regulations. It argues that under the law this was the full measure of its duty, and, having discharged that duty, there was no basis on which the jury could find that it was negligent. But Central fails to appreciate the extent of its legal obligation to a person in the situation of plaintiff. The trial judge charged the jury that Central could be held negligent if it breached its duty to warn the plaintiff and his fellow

employees of the hazard of injury inherent in the overhead wires. Central protests that this was erroneous, contending that it had no duty to give warnings in the absence of notice that metal blocks were being stored under its wires. This contention is untenable.[1] Ward v. New York State Electric & Gas Corporation, 290 N.Y. 325, 49 N.E.2d 159; Bennett v. New York & Queens Electric Light & Power Co., 294 N.Y. 334, 62 N.E.2d 219; Pike v. Consolidated Edison Co., 303 N.Y. 1, 99 N.E.2d 885. The thrust of these decisions is such that Central's knowledge that construction was under way which involved the use of a crane gave rise to a duty on its part to take reasonable precautions to prevent harm from its wires. And a jury might have found that the posting of warning signs was at least a part of that duty. McFall v. Compagnie Maritime Belge, 304 N.Y. 314, 107 N.E.2d 463.

Central argues that its position on this point is sustained by Troidle v. Adirondack Power & Light Corp., 252 N.Y. 483, 169 N.E. 654, and Buell v. Utica Gas & Electric Co., 259 N.Y. 443, 182 N.E. 77. But under the Ward, Bennett and Pike decisions, supra, the doctrine of the cases cited by Central has no applicability to the facts of the instant case. Moreover, it is to be noted that in the Buell case the court carefully pointed out that the victim, his employer and the defendant had notice of the dangerous instrumentality.

 We think that Central was under a duty to warn the plaintiff. The record is replete with evidence sustaining the jury verdict that Central breached this duty and that its failure was a proximate cause of plaintiff's harm. Hence, Central could properly be held liable for the injuries sustained by the plaintiff.

 We now come to the question of the validity of the jury verdict granting Central recovery over against Ninnie. There was no express contract of indemnity: Central's claim for indemnity is based on common law tort principles. It has long been the law of New York that "* * * even in the absence of an express covenant of indemnity a primary or principal wrongdoer is responsible for his negligent act not only to the person directly injured, but also to one indirectly harmed by being cast in damages by operation of law for the wrongful act." Tipaldi v. Riverside Memorial Chapel, 273 App.Div. 414, 78 N.Y.S.2d 12, 17. See also Dunn v. Uvalde Asphalt Paving Co., 175 N.Y. 214, 67 N.E. 439; Scott v. Curtis, 195 N.Y. 424, 88 N.E. 794, 40 L.R.A.,N.S., 1147. Thus, if Central proved that its negligence was only "passive" and that Ninnie was the primary wrongdoer in bringing about Banks' harm, the New York law would imply a contract of indemnity running from Ninnie to Central. See Schwartz v. Merola Brothers Construction Corp., 290 N.Y. 145, 48 N.E.2d 299; Phoenix Bridge Co. v. Creem, 102 App. Div. 354, 92 N.Y.S. 855, affirmed 185 N.Y. 580, 78 N.E. 1110. Oceanic Steam Navigation Co. v. Compania Transatlantic Espanola, 134 N.Y. 461, 31 N.E. 987.

 This doctrine is often referred to as "active" and "passive" negligence. A tort-feasor whose negligence is only "passive" can recover from a co-tort-feasor if the latter is guilty of "active" negligence. To say that an act of omission is generally regarded as passive negligence only, while an act of commission is regarded as active negligence, may be useful dichotomy. But however useful the formula may be as a clue, under the law of New York it is not the sole criterion. It is the function of the jury to determine whether both defendants were guilty of negligence contributory to the harm: if so, to determine whether they were equally at fault in which event no right of indemnity arises. If, however, the jury finds that the fault of the third-party plaintiff was passive only and that the fault of the impleaded defendant was the primary cause of the harm,

1. Both parties concede that the law of New York is applicable in this case.

the latter will be held to indemnify the former in an action over. McFall v. Compagnie Maritime Belge, supra.

■ At the close of the evidence in the instant case Ninnie moved to dismiss the third-party complaint on the ground that at most it was in *pari delicto* with Central. We think, however, that the trial judge properly denied this motion. Especially in view of the evidence that Ninnie placed the metal blocks under Central's wires, that it was the proximity of Ninnie's crane to the wires, and that it was Ninnie's signal man who failed to signal, it was for the jury, under the cases cited above, to determine whether Ninnie's was the primary negligence.

The trial judge instructed the jury that it could not consider Central's failure to insulate or de-energize as evidence of negligence. It was made clear to the jury that Central's negligence could only be predicated on a finding that it breached its duty to warn the plaintiff. Ninnie contends that this instruction was error. The contention is important because of the impact of this instruction on the comparative negligence of the two actors.

■ Under the New York law, an electric company is not made an insurer against injury. Nevertheless, as was said of high voltage electricity in Morhard v. Richmond Light & Railroad Co., 111 App.Div. 353, 98 N.Y.S. 124, 127, "This was a deadly force, and it was defendant's duty to exercise a high degree of care to protect the deceased from this current." In Ferrari v. New York Central & Hudson R. Co., 224 App.Div. 182, 230 N.Y.S. 60, 65, it was stated that wires carrying high voltage electricity must be "maintained and operated with reasonable care; reasonable care is a relative term, varying with circumstances and surroundings; here only a very attentive oversight of the dangerous instrumentality used by it in its business would meet the measure of its duty." There are many New York cases in which the evidence was such that it was held that the failure to insulate,

even when regulations do not require insulation, or the failure to remove wires or to de-energize, may constitute a breach of this duty and hence were questions for the trier of the facts. Braun v. Buffalo General Electric Co., supra; Burrows v. Livingston Niagara Power Co., 217 App.Div. 206, 216 N.Y.S. 516; Casualty Co. v. A. L. Swett Electric Light & Power Co., 230 N.Y. 199, 129 N.E. 653; Ward v. New York State Elec. & Gas Corp., supra; Bennett v. New York Queens Elec. Light & Power Co., supra; Pike v. Consolidated Edison Co., supra.

In Nicholas v. New York State Electric & Gas Corp., 283 App.Div. 291, 127 N.Y.S.2d 490, a case decided by a divided court and affirmed also by a divided court without opinion in 1955, 308 N.Y. 930, 127 N.E.2d 84, it appeared that the plaintiff had been injured by electric shock while painting the inside of an electric company sub-station. In setting aside a plaintiff's verdict the court in effect ruled as a matter of law that the failure of the company to de-energize the electric conductors involved in the accident was a fact not in itself enough to constitute negligence. It is true that the opinion of the Appellate Division contained no ruling, express or implied, that considerations of reasonable care will never require a utility engaged in distributing electricity to the public to de-energize. At most it suggested that the duty of the utility to serve the consuming public is one factor bearing on its duty to safeguard from harm other members of the public. The opinion stressed the fact that the plaintiff, a professional steel painter with experience in painting in proximity to live wires, admitted that he had been warned of, and thoroughly understood, the hazard under which he was working. Implicit is the view that effective warnings of the danger of live wires may mitigate the need to de-energize them. With this in mind, we think the reversal imports not that the numerous cases cited above have been overruled but only that the weight of evidence in that particular case had been insuffi-

cient to sustain the jury's finding of negligence.

 Against this background of New York law, we come to the question whether in the state of the record in this case it was erroneous for the trial judge wholly to exclude Central's failure to de-energize from the consideration of the jury. As to this, we think that, forthwith when put on notice that Ninnie's crane had moved into the scene, no duty to de-energize arose if less drastic measures, not involving a suspension of its obligation to serve the consuming public, were available which might reasonably have been expected to be efficacious to protect the public from harm. The law of New York does not require that on notice of construction in the vicinity of its power lines a public utility has a duty to shut off power to the public until all possibility of harm that could result from the interaction between construction operations and its wires has ceased. Neither the cases cited above nor any others that we have found go to such a length: the Nicholas case contains at least an intimation to the contrary.

 Here, however, irrespective of the efficacy of suitable warnings as possibly obviating the need for further precautions, the verdict necessarily imports a finding that such warnings were not given. As noted above it cannot be said that finding was without adequate support in the evidence. From Central's failure in the discharge of its duty to warn, it does not follow that it was absolved from taking other available precautions. Thus the jury was confronted with questions as to Central's duty to take other, additional, precautions, including possibly de-energization, and for the solution of such questions was in vital need of appropriate instructions.

Although, as we hold, on this point the charge as given was erroneous and incomplete, the error does not taint the plaintiff's verdict against Central. For as noted above there was evidence sufficient to sustain the finding of negligence by Central. But as against Ninnie we think that the inaccuracy and insufficiency of the charge for the impact on the issues raised by the third-party complaint constituted reversible error. For if the jury had been instructed, as we think it should have been, that failure by Central to take one precaution did not necessarily absolve it from taking other available precautions, including de-energizing, it might have found that Central's aggregate fault, compounded of the failure to warn and failure to take other reasonable precautions, as compared with Ninnie's fault compounded of all proved negligent acts of omission and commission, was more than passive. Of course, the jury in making such a determination should concern itself only with such acts of negligence as it should find to constitute proximate causes of the accident. Instructions to that effect were also necessary.

What has been said above about a possible duty to de-energize applies equally to a possible duty to insulate. If warnings alone were inadequate precautionary measures, or if Central failed to warn, it was for the jury to determine under suitable instructions whether under all the circumstances Central's failure to insulate comported with the high degree of care required of it.

On a new trial of the issues under the third-party complaint, questions relating to the admissibility of a certain document now pressed by Ninnie will probably become moot. However, for whatever guidance it may be to the judge presiding at the new trial we will say that we think Judge Clancy was right in admitting it for purposes of impeachment only.

Judgment in favor of the plaintiff, affirmed: judgment in favor of Central reversed and remanded for a new trial on all issues raised by the third-party complaint.