**Janet PORTER, Administrator of the Estate of Randy Laverne Porter, Deceased, Appellant,**

v.

**IOWA POWER AND LIGHT COMPANY et al., Appellees.**

No. 1–55720.

Supreme Court of Iowa.

April 24, 1974.

Patterson, Lorentzen, Duffield, Timmons, Irish & Becker, Des Moines, and Shirley, Smith & Shirley, Perry, for appellant.

Duncan, Jones, Riley & Davis, Des Moines, for appellee Iowa Power & Light Co.

Heslinga & Heslinga, Oskaloosa, for appellee Garden Engineering Service, Inc.

Ahlers, Cooney, Dorweiler, Allbee & Haynie, Des Moines, for appellee City of Altoona.

Heard by MOORE, C. J., and RAWLINGS, REES, UHLENHOPP and McCORMICK, JJ.

McCORMICK, Justice.

Plaintiff in this wrongful death action appeals judgment entered for one defendant on a directed verdict and for two other defendants on a jury verdict. We affirm the judgment entered on the directed verdict but reverse the judgments entered on the jury verdict.

Plaintiff's decedent Randy Laverne Porter was an employee of Crees Enterprises, Inc., ("Crees"), a general contractor engaged by defendant The City of Altoona, Iowa ("City") to do paving work. Defendant Garden Engineering Service, Inc. ("Garden") was engineer for the City in relation to the project. Decedent was electrocuted on August 26, 1969, while working on the project in a City intersection when a crane operated by a fellow employee of Crees came close enough to a 7200 volt electric line of defendant Iowa Power and Light Company ("Ipalco") to cause the electricity to travel through the crane and decedent's body to the ground.

Plaintiff's petition alleged each defendant was negligent in several respects and asked wrongful death damages from each. The case went to trial. At the conclusion of plaintiff's evidence the court sustained a motion for directed verdict by Garden. Upon later submission of the case to the jury against the City and Ipalco the jury returned a verdict for the defendants.

There was little conflict in the material testimony.

L. J. Wise, mayor of the City, testified the paving project was part of a large paving and sewer project undertaken by the City in 1969. Garden was employed by the City as its engineer to draw plans and specifications and then inspect the project until completion. Crees received the contract for paving work by assignment from the successful bidder. The City notified Ipalco of the project and furnished it a copy of the plans and specifications. The mayor saw employees of Ipalco at the job site occasionally during progress of the work. He also saw Crees using a crane on the project and knew of high voltage lines in the vicinity. He knew Ipalco had to move one utility pole during the work. He did not warn Crees or its employees of danger from the high voltage lines.

John Hesling, president of Garden, testified his firm designed the project. He said he notified Ipalco of the project, furnished it a copy of the plans and specifications, and during the course of work Ipalco relocated and lowered a number of gas lines and may have moved one or two utility poles. He and two of his employees testified Garden's role during the construction was to inspect the work to assure the finished product would substantially comply in quantity and quality with the plans and specifications. Garden was not concerned about equipment unless it would adversely affect product quality and had no supervision of Crees' employees.

Daryl Crees, owner and operator of Crees, testified his company started work in July or August 1969 on the paving project. Various heavy machines including a crane were used in the work. The crane was used for moving heavy equipment and in pouring cement. It was a 25 ton mobile truck-mounted crane with a 40 foot boom. Decedent worked for Crees as a laborer and equipment operator. On August 29, 1969, in late afternoon, Crees was in the process of pouring cement in an intersection area that was inaccessible by truck. A large concrete bucket was attached to the crane cable, and the crane was used to lift the concrete across a slab that was too fresh to accommodate the weight of trucks.

The intersection and procedure being employed were described by several witnesses. The completed slab was the northernmost slab in an east-west street. It was about 15 feet wide. Concrete was being laid in the northeast corner of the intersection in an area called a radius. Ipalco's electric lines crossed the intersection from north to south several feet to the east of the north-south curb line. The top wire, a bare wire about 33 feet above the ground, carried 7200 volts of electricity, and three lines below carried 120 volts. The crane was positioned south of the completed slab, east of the intersection's north-south centerline. The concrete truck was to the west.

The procedure was that the bucket would be filled at the cement truck and then lifted about four feet above the ground across the slab to the radius in a southwest to northeast arc. Decedent was in charge of signalling the crane operator as well as dumping the bucket. When the bucket reached the place it was to be dumped the crane operator would stop the boom but the bucket would keep swinging in about a ten foot arc in a pendulum motion. Decedent and Mr. Crees would steady the bucket and then decedent would operate a trip lever to dump it. Others worked on the fresh concrete with shovels and finishing tools.

Decedent occasionally rode on the bucket. In the instance involved he had done so. Mr. Crees had hold of the bucket and let go when it got to the point it was to be dumped. It started its pendulum motion. Decedent stepped off and proceeded to steady it. While he was steadying the bucket, the boom or cable picked up a charge from the 7200 volt line, and he was electrocuted.

One eyewitness thought the cable touched the wire. Another said it was within six to eight inches of the wire when he saw it. Others, including the crane operator, asserted it never came closer than three to four feet of the wire. All agreed the boom extended above the wire.

After the accident the work was completed with the crane in the same position. However the bucket was not swung as far northeast. It was lifted north across the slab and dumped. About 15 men with shovels moved the concrete the rest of the way to the northeast.

Mr. Crees testified Ipalco had a man on the job almost all the time. He said poles too close to the street were relocated and gas lines were lowered. Several other witnesses confirmed the frequent presence of Ipalco employees. Mr. Crees and several of his employees including the crane operator testified they were aware of the presence of the lines and the danger of electricity but did not know any of them carried high voltage.

Mr. Crees confirmed the testimony of witnesses Wise and Hesling that the role of Garden on the project was limited to assuring the work was done according to design. He said Garden did not supervise his men but could shut down the job at any time the work was not being done as designed.

Phillip Ehm, manager of gas and electric systems for Ipalco, testified the electrical installation conformed to the minimum requirements of the National Electric Safety Code. The 33 foot elevation of the 7200 volt line substantially exceeded the 20 foot elevation requirement of the code. He said mechanical insulation on lines of that voltage is impractical so they are isolated by elevation instead. Mr. Ehm and Clarke Bennett, a consulting engineer, said electricity from a 7200 volt line could not arc more than four-tenths of an inch.

Mr. Ehm testified he did not know Crees was going to use the crane in the intersection, but would have given appropriate advice had he known of its use there. He would have told Crees how to ground the crane. He also testified the line could

have been de-energized just south of the intersection, and service to about 30 to 50 homes would have been affected.

Seven main questions are raised by the appeal: (1) Did the contract between the City and Crees establish a submissible duty owed decedent by the City and Garden? (2) Should testimony have been received that precautions would have been taken by Crees if warned of the danger? (3) Should additional negligence specifications have been submitted against the City? (4) Should additional negligence specifications have been submitted against Ipalco? (5) Should certain of plaintiff's requested instructions have been given? (6) Were plaintiff's exceptions to trial court's instructions erroneously overruled? (7) Were the special interrogatories submitted to the jury proper?

I. *The contract between City and Crees.* Plaintiff sought to introduce the contract between the City and Crees into evidence to establish a duty owed her decedent thereunder which she alleged was negligently breached by the City and Garden as agent for the City. By motion in limine the City and Garden obtained a ruling from trial court excluding the contract from evidence and holding it did not establish the duty asserted. Plaintiff admits her cause of action against Garden depended on establishment of that duty under the contract. Thus, if trial court was correct in holding the duty did not exist under the contract, then the court was also correct in sustaining the directed verdict for Garden.

■ Plaintiff argues this case is like *Giarratano v. Weitz Co., Inc.*, 259 Iowa 1292, 147 N.W.2d 824 (1967). In that case we recognized the well settled rule that when a contract imposes a duty upon a person, the neglect of such duty is a tort, and an action ex delicto will lie. Id. 259 Iowa at 1305, 147 N.W.2d at 832. We also found the contract between a general contractor and a subcontractor in that case imposed a responsibility on the general contractor for the safety of employees of the subcontractor. We agree with plaintiff that such duty may be imposed by contract, but we agree with trial court that such duty was not imposed by the contract in this case.

■ Plaintiff's assertion she had a right to put the contract before the jury to let the jury decide whether it imposed a duty on the City and Garden with respect to employee safety raises an issue as to the right of the trial court to treat the matter of construction of the contract as a question of law for the court and not a question of fact for the jury. Construction, the legal effect of a contract, is a matter of law to be decided by the court. *Brammer v. Allied Mutual Insurance Company*, 182 N.W.2d 169, 172 (Iowa 1970).

■■ More specifically, trial court had a right to decide whether the contract established the asserted duty as a question of law. The question of existence of duty is a matter of law for the court. Prosser, Law of Torts, § 37 at 206 (Fourth ed. 1971).

■ The contract relied on by plaintiff included a paragraph incorporating by reference the plans and specifications for the work. The City and Garden supplemented the record by furnishing the court with a copy of the plans and specifications. We believe it was necessary for the court to consider, as it did, the material provisions of the entire contract including those parts incorporated by reference. § 622.19, The Code; see McCormick on Evidence, § 56 at 132 (Second ed. 1972).

Plaintiff points to paragraphs 9, 14 and 19 of the contract as establishing the duty of the City and its agent Garden to supervise job safety. Those paragraphs are:

"9. The [City] shall have the right to appoint one or more inspectors, who shall have immediate supervision of the work in detail under direction of [Garden], also to make any tests of any materials to be used in such work. No ma-

terial shall be used in said work until the same has first been approved by the inspectors. Such inspectors shall have full authority to pass judgment upon all materials and upon the manner of doing the work, and their judgment rejecting any material, substance or manner of work shall be final unless it is revoked or modified by the [City] or [Garden].

"14. [Crees] shall have a competent representative on the work at all times. This representative shall have authority to make decisions and enforce all orders of the Engineer.

"19. Any person employed on this work deemed incompetent or disorderly by [Garden] shall be dismissed by [Crees] and not be re-employed without permission of [Garden]."

Plaintiff contends paragraphs 9, 14, and 19 show the City retained the right to control the manner of performance of the work and, having done so, is responsible along with its agent Garden for negligence by Crees occurring during the course of such work. Plaintiff argues it is not necessary that the responsibility for safety be expressly reserved nor is it necessary that the retained right of control have actually been exercised.

Preliminarily, we note this situation is not like that in Giarratano since in that case the contract relied on expressly imposed safety responsibility on the general contractor which was in the contractual position of the City in this case. Here the contract expressly imposes safety responsibility on Crees which is in the position in relation to the contracting parties that the subcontractor was in the Giarratano case. See 259 Iowa at 1298–1299, 147 N.W.2d at 828.

This distinction does not answer the problem here, however, because, as pointed out by plaintiff, we adopted in Giarratano the principle in Restatement of Torts, Second, § 414, which provides:

"One who entrusts work to an independent contractor but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care."

Plaintiff thus contends retention of control of part of the work created a nondelegable duty in the City and Garden making them responsible for failure to exercise such control with reasonable care to prevent the accident in this case.

Comment "a" to the restatement rule says the retained control must be over the "operative detail of doing any part of the work." Comment "b" illustrates the usual situation, one in which a principal contractor entrusts a part of the work to subcontractors, but himself or through a foreman superintends the entire job. Comment "c" further qualifies and defines the kind of retained control contemplated by the rule:

"In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way."

The question presented is whether the City did retain control of any part of the work within the meaning of the restatement rule. As held in Giarratano the practical construction given the contract by

the parties bears on this issue. 259 Iowa at 1302–1303, 147 N.W.2d at 831; see 3 Corbin on Contracts, § 558 (1960); 4 Williston on Contracts, § 623 (Third ed. 1961). Here, during the course of trial, there was uncontroverted testimony in behalf of the parties to the contract and Garden that the City's retention of control extended only to assure the work done conformed to the plans and specifications.

■ The generally accepted rule is that retention of the right to inspect work under construction to see that the provisions of the contract are carried out and to stop work if they are not is insufficient in itself to constitute retention of control of any part of the work within the meaning of the restatement principle. Fisher v. United States, 441 F.2d 1288 (3 Cir. 1971); DeVille v. Shell Oil Company, 366 F.2d 123, 125 (9 Cir. 1966); Hader v. Coplay Cement Mfg. Co., 410 Pa. 139, 189 A.2d 271 (1963); 41 Am.Jur.2d Independent Contractors § 29 at 789; 57 C.J.S. Master and Servant § 602; Restatement of Torts, Second, § 414, comment "c".

■ Although the broad language of paragraphs 9, 14, and 19 of the contract would appear to give considerable control over the paving project to the City, we believe the practical construction of the contract by the parties shows the City had only a right to inspect the quality of work and its conformance to design and retained control over the work only to the extent of implementing that right. This situation thus comes within the exception explained in Comment "c" to the restatement rule and does not involve retained control of a kind to impose a nondelegable duty to assure the work was done safely.

Such cases as Kobus v. Formfit Company, 35 Ill.2d 533, 221 N.E.2d 633 (1966), where an owner retained control of building construction through an architect, are distinguishable as illustrating the kind of partial retention of control required for application of the restatement rule.

We hold trial court was correct in treating construction of the contract as a question of law and in concluding the contract did not impose a nondelegable duty on the City or its agent Garden to assure the work was done safely by Crees.

Since plaintiff's cause of action against Garden depended on establishing such duty, it follows trial court did not err in sustaining Garden's motion for directed verdict.

II. *The ruling on evidence.* Daryl Crees, owner of Crees, called as a witness by plaintiff, testified he supervised the project for his company. He said he did not know the uninsulated 7200 volt line was in the vicinity of the intersection. Then he was asked, "Had you known the line where this arcing came from was uninsulated and was 7200 volts, would you have taken some precautions for the protection of your help that were not taken?" Objection was made by counsel for Ipalco that, "It's irrelevant and immaterial, highly speculative as to what he might have done, calling for the opinion and conclusion of the witness, entirely unwarranted." Counsel for Garden objected that the question was leading and suggestive, speculative, called for a state of mind, and was immaterial. Trial court sustained Ipalco's objection on all but the last ground urged.

Counsel for plaintiff made an offer of proof out of the jury's presence that, " * * * [I]f this witness were permitted to answer the interrogatory propounded * * *, he would testify that he would have taken additional precautions for the purpose of protection of his help." He made no further offer of proof nor did he alert the court to his theory of admissibility.

Now plaintiff contends the answer should have been permitted because it would assist the jury in determining whether the City and Ipalco's failures to warn Crees of the danger from the high voltage line were proximate causes of the electrocution. Defendants maintain trial

court's ruling was correct on the grounds urged in the objections.

■ We have repeatedly said the receipt of opinion evidence, lay or expert, rests largely in the sound discretion of trial courts, and we will not reverse their rulings unless manifest abuse of discretion is shown. Ganrud v. Smith, 206 N.W.2d 311, 314 (Iowa 1973). The same standard is applicable where questions of materiality and relevancy are involved. State v. Mathias, 216 N.W.2d 319, 322 (Iowa 1974).

■ In considering whether trial court's discretion was abused in the present case we also consider that where the materiality and relevancy of evidence are not apparent, the party offering the evidence is obliged to state the purpose of the proof. State v. Clay, 213 N.W.2d 473, 477 (Iowa 1973).

■ Another applicable principle is that when an objection is *sustained,* the trial court ruling will be upheld on appeal if the evidence could be held inadmissible on any theory, whether urged in the objection or not. This contrasts with principles that a general objection, if *overruled,* ordinarily cannot avail the objector on appeal and that a specific objection, if *overruled,* cannot avail the objector except as to the ground specified. 1 Wigmore on Evidence, § 18 at 332–343 (Third ed. 1940); see State v. Buckner, 214 N.W.2d 164, 167–168 (Iowa 1974).

Although thus not determinative we note the objections by Ipalco and Garden in this case effectively challenged the opinion sought to be elicited by the question as speculative, immaterial and irrelevant. See Twin-State Eng. & Chem. Co. v. Iowa State Hwy. Com'n, 197 N.W.2d 575, 581 (Iowa 1972); State v. Clay, supra.

■ The question inverted the usual use of hypothetical facts. Ordinarily a hypothetical question includes facts which may be found from the record to exist. Here the question included a fact which did not exist but which the witness was asked to suppose existed. "The court will ordinarily reject a mere supposition of a witness as to what would have happened if something had occurred which did not, * * * or as to what a person would have done if he had known certain facts, * * *" 32 C.J.S. Evidence § 450 at 87–88.

Such evidence has been held properly excluded in a number of cases. See, e. g., Ruby v. Chicago, M. & St. P. Ry. Co., 150 Iowa 128, 129 N.W. 817 (1911); Drackett Products Co. v. Blue, 152 So.2d 463 (Fla. 1963), conformed to 153 So.2d 346 (Fla. App.1963); cf. State ex rel. Highway Commission v. Daigh, 464 S.W.2d 524 (Mo.App.1971).

■ In the present case evidence was separately received as to what changes in procedure Crees did institute after the electrocution of decedent. The offer of proof did not include evidence of any different precautions that would have been taken had Crees been aware of the danger prior to the accident.

Under this record we do not believe trial court abused its discretion in sustaining Ipalco's objection to the proffered evidence. The court might well have concluded the testimony was speculative and of no probative value.

III. *Negligence charges against the City.* Trial court submitted two pleaded negligence specifications against the City for jury consideration. They related to the City's duty toward decedent as a business invitee to provide him a reasonably safe place to work and to warn him of the danger from the high line. This was under the theory that the employee of an independent contractor is an invitee on the premises of the contractor's employer. See Giarratano v. Weitz Co., Inc., supra; Tyler v. Peel Corp., 371 F.2d 788 (5 Cir. 1967); Midland Properties Co. v. Farmer, 100 Ga.App. 8, 110 S.E.2d 100 (1959); Graham v. Loper Elec. Co., 192 Kan. 558,

389 P.2d 750 (1964). Plaintiff contends two additional specifications should have been submitted. They charged the City with negligence:

(1) "In failing to take reasonable precautions against special dangers which were inherent and normal in such work, when the defendant knew or in the exercise of reasonable care should have known that the use of a boom crane provided special dangers to the decedent and to workmen performing their duties in the said intersection." and

(2) "In failing to require the defendant Ipalco to either de-energize, insulate, or take other safety precautions to protect the plaintiff's decedent and other workmen from the dangers of the high voltage line."

The first specification raises another issue involved in the Giarratano case. In that case we adopted Restatement of Torts, Second, §§ 413, 416 and 427. They are:

413. "One who enploys an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer

(a) fails to provide in the contract that the contractor shall take such precautions, or

(b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions.

416. "One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions,

even though the employer has provided for such precautions in the contract or otherwise.

427. "One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger."

As noted in Comment "e" to § 413, the duty imposed by that section does not apply where the contract requires the independent contractor to take the necessary precautions, but § 416 may be applicable. Under the rule stated in § 416 a nondelegable duty is imposed on the employer as to work which the employer should recognize is likely to create during its progress a peculiar risk of harm to others.

A similar nondelegable duty exists under § 427 with respect to special dangers to others which the employer knows or has reason to know are inherent in the work.

Since the contract between the City and Crees required Crees to take necessary safety precautions, the rule in § 413 is inapplicable in this case. The issues remain whether the work was "likely to create during its progress a peculiar risk of physical harm to others" within the meaning of § 416 or a known or foreseeable danger "inherent in or normal to the work" within the meaning of § 427.

Comment "d" under § 416 refers to Comment "b" under § 413 for explanation of the concept of "peculiar risk." The latter comment says the duty imposed on the employer "is not concerned with the taking of routine precautions, of a kind which any careful contractor could reasonable be expected to take, against all of the ordinary and customary dangers which may arise in the course of the contemplat-

ed work." We believe the presence near streets of electric transmission and distribution lines is a matter of common knowledge and a paving contractor can reasonably be expected to take precautions against contacting them. See Brletich v. United States Steel Corporation, 445 Pa. 525, 285 A.2d 133 (1971). Hence we do not think the presence of the high line in the present case was a "peculiar risk" creating a nondelegable duty in the City to decedent under § 416.

Similarly, the Comment to § 427 explains that section applies only where the danger is inherent in the work when properly done and does not cover situations arising because of collateral negligence of the independent contractor. Danger is not inherent unless it attends the normal and usual method of doing the work. The danger of electrocution was not inherent in the work. See James F. O'Neil Co. v. United States Fidelity & Guaranty Co., 381 F.2d 783 (6 Cir. 1967). We do not believe the City owed decedent a nondelegable duty under § 427. See Prosser, Law of Torts, § 71 (Fourth Ed. 1971); 41 Am. Jur.2d Independent Contractors § 41 at 807. The work in this case did not involve the peculiar risk and inherent danger of that in Giarratano, where the independent contractor was installing a gypsum roof 80 feet above the ground on a building under construction.

Accordingly we do not believe trial court erred in refusing to submit the first additional specification of negligence contended for by plaintiff.

We read the second additional specification as a duplication of the specification submitted requiring the City to provide decedent a safe place to work. It is more specific but it relates to the same duty. Although it is error for a trial court not to submit pleaded specifications of negligence which have support in the evidence, this principle does not require the same issue to be submitted in two forms. Karr v.

Samuelson, Inc., 176 N.W.2d 204, 212 (Iowa 1970).

We hold trial court did not err in refusing to submit the two additional specifications of negligence against the City.

IV. *Additional negligence charges against Ipalco.* Four pleaded specifications were submitted against Ipalco. Plaintiff contends trial court erred in not submitting two additional specifications. The specifications which were submitted charged Ipalco with negligence:

"(a) In operating and maintaining said electric lines without having said wires insulated or otherwise protected.

"(b) In operating and maintaining said electric lines, as they were, where Ipalco knew or should have reasonably anticipated said wires would come in contact or close proximity to machinery being used by decedent.

"(c) In failing to warn decedent of the presence in their then condition at said location.

"(d) That Ipalco owed a duty to warn, or to take reasonable affirmative steps to protect the decedent from lawfully coming in close proximity to said lines."

The additional specifications not submitted charged Ipalco with negligence:

(1) "In failing to warn that electricity from the uninsulated line could arc to the machinery in close proximity thereto." and

(2) "In failing to de-energize, move, insulate or guard the wire after having knowledge of the fact that a crane was working in the vicinity of the wire."

The first additional specification is covered by the substance of specifications (c) and (d) which were submitted. The duty to warn of danger from the line was submitted, and the court was not obliged to submit it again in another form. Karr v. Samuelson, Inc., supra. If plaintiff want-

ed amplification with respect to the danger of arcing it was proper matter for an explanatory instruction rather than a separate specification of negligence. See Callan v. Bartlett Electric Cooperative, 423 S. W.2d 149 (Tex.Civ.App.1968).

■■■ Ipalco asserts it had no duty to warn because Crees, and his employees were, as a matter of law, aware of the danger. We do not agree with this contention. There was no direct evidence decedent was even aware of the presence of the lines, but even if he could be charged with that knowledge it was for the jury to say whether he appreciated the danger involved. Smith v. J. C. Penney Co., 260 Iowa 573, 149 N.W.2d 794 (1967). The jury could also find, contrary to Ipalco's argument, that the danger from a 7200 volt line is substantially greater than one of nominal voltage. Stimmel v. Kerr, 394 Pa. 609, 148 A.2d 232 (1959). Ipalco does not contend the evidence was insufficient for the jury to find it had notice of Crees' use of the crane.

■■■ The second additional specification is covered by the substance of specification (a) which was submitted. We do not think the fact trial court paraphrased the pleaded specification, which as pleaded was in the form of the second specification plaintiff alleges should have been given, is cause in itself for reversal. Russell v. Chicago, R. I. & P. R. Co., 251 Iowa 839, 848, 102 N.W.2d 881, 887 (1960) ("It is not unusual or improper for instructions to juries to paraphrase pleaded specifications of negligence."). However, it would have been better for the court to submit the specification in the form pleaded in this case because the alternatives to insulation were not otherwise explained in the instructions. The submitted specification refers only to a duty to assure the wire was "insulated or otherwise protected." What constitutes other protection was not defined. As pointed out in Division V, infra, we believe it was reversible error for trial court to refuse plaintiff's requested in-

struction which would have amplified that concept by referring to alternatives to mechanical insulation including de-energizing, moving or guarding the wire.

We do not find reversible error in the court's refusal to submit the additional negligence specifications against Ipalco.

V. *Plaintiff's requested instructions.* Plaintiff contends trial court erred in refusing to give seven of his requested instructions. The record shows he took timely exception to such refusal on the same grounds urged here.

■■ Plaintiff's requested instruction 2 would have informed the jury the fact the particular injury may not have been foreseeable to the City would not eliminate the City's duty to warn of known dangers and all the City needed to know was "that the condition of the premises where he was working might result in some injury to some person and its duty to exercise reasonable care is then imposed." This instruction was a proper statement of law. Greenwell v. Meredith Corporation, 189 N.W.2d 901, 906 (Iowa 1971). The concept was not covered in the instructions given.

■■ Where a party requests an instruction stating a correct rule of law having application to the facts of the case, and the concept is not otherwise embodied in the court's instructions, he is entitled to have his requested instruction or its substance given. Henneman v. McCalla, 260 Iowa 60, 69, 148 N.W.2d 447, 452–453 (1967); Welton v. Iowa State Highway Commission, 211 Iowa 625, 233 N.W. 876 (1930).

Trial court erred in refusing to give plaintiff's requested instruction 2.

■■ In her requested instruction 3 plaintiff sought to have the jury told of the City's duty to decedent under Restatement of Torts, Second, §§ 416 and 427. Since we have found such duty did not ex-

ist under the evidence in this case, the court did not err in refusing the request.

■ Plaintiff's requested instruction 5 included language which would have amplified the negligence specification submitted against Ipalco relating to its duty to insulate or otherwise protect its wire. It would have informed the jury of Ipalco's duty to avoid injury to decedent and others in lawful proximity to its lines "by insulating the wires, de-energizing the wires, guarding the wires, or warning of their presence and known danger." This request stated a correct principle of law, applicable to the facts, and not covered by other instructions. The court erred in refusing to give it. See Cronk v. Iowa Power & Light Company, 258 Iowa 603, 138 N.W.2d 843 (1965). The jury could find that the utility could meet its duty to decedent as well by de-energizing the wires, for example, as by insulating them. Banks v. Central Hudson Gas & Electric Corp., 224 F.2d 631 (2 Cir. 1955). There was evidence from which the jury could find that measure was more practical and feasible, and thus more reasonable, than mechanical insulation. The court should have given requested instruction 5.

■■ Plaintiff's requested instruction 7 would have informed the jury negligence of Crees could not be imputed to decedent. This instruction stated a correct principle of law. Although an employee's negligence may be imputed to his employer, the converse is not true. Casualty Co. v. A. L. Swett Electric Light & Power Co., 230 N.Y. 199, 129 N.E. 653 (1920); see Prosser on Torts, supra, § 69. Defendants sought to establish that negligence of Crees was the sole proximate cause of the death. They also sought to establish decedent's contributory negligence as a proximate cause of his death. It was appropriate for the court to distinguish the duty of Crees from that of decedent. The principle was not covered by other instructions. Trial court erred in refusing to give the requested instruction or its substance.

■ Plaintiff's requested instructions 9, 11 and 12 all related to principles which we find were substantially incorporated in the court's instructions. When the matters raised in a requested instruction are so covered, "no error results from a failure to submit the issues in the form requested." McCarthy v. J. P. Cullen & Son Corp., 199 N.W.2d 362, 367–368 (Iowa 1972).

The case must be reversed and remanded for new trial against both defendants because of trial court error in refusing requested instructions 2, 5 and 7.

VI. *The court's instructions.* Plaintiff took timely exception to trial court's statement of issues in the case and instructions 10, 11, 13 and 18 on the same grounds urged here.

■■■ In the court's statement of issues, the jury was informed one of the specifications of contributory negligence against decedent, submitted in a later instruction, was his alleged negligence in riding the cement bucket. A trial court may submit issues presented by the pleadings only when there is substantial evidence to support them. Bradt v. Grell Construction, Inc., 161 N.W.2d 336, 340 (Iowa 1968). Plaintiff contends the record lacks substantial evidence to show decedent's riding in the bucket could have been a proximate cause of the accident. We agree.

The evidence was undisputed that decedent had ridden the cement bucket during the course of work, but it is also undisputed that he was not doing so at the time he was electrocuted. He was on the ground steadying the bucket as it was about to be dumped at the time the crane picked up the electrical charge. A separate specification accused him of negligence in failing to signal the crane operator to keep the cable away from the high line. We agree with plaintiff the specification charging decedent with negligence for riding in the bucket should not have been submitted to the jury because such conduct could not have been a proximate cause of the acci-

dent. Trial court erred in submitting the issue.

■ The court also referred in the statement of issues to an allegation in the City's answer that decedent "had actual knowledge of the existence of the power line in question, and that there was an alternate safe method of performing the work he was engaged in available which was known to said decedent." No further reference to this assertion appears in the instructions. Trial court did not purport to submit it as an additional defense, and we agree the record would not have supported imposing this duty on decedent. Although we do not decide whether this statement read with the instructions as a whole would constitute reversible error, we believe plaintiff's exception to it should have been sustained. See Clayton v. McIlrath, 241 Iowa 1162, 1166–1167, 44 N.W.2d 741, 744 (1950).

■ In instruction 10 the court told the jury of the duty of the City and Ipalco to warn of known dangers. Plaintiff excepted to the court's failure to inform the jury defendants also had a duty to warn of dangers they should have known in the circumstances. This exception was well taken. It is the court's duty to instruct with reasonable fullness on the issues. Gibbs v. Wilmeth, 261 Iowa 1015, 157 N.W.2d 93 (1968). Defendants' duty to warn encompassed dangers which they knew and those which in the exercise of reasonable care they should have known. Smith v. Cedar Rapids Country Club, 255 Iowa 1199, 1205, 124 N.W.2d 557, 561 (1963) (relating to the City's duty); Banks v. Central Hudson Gas & Electric Corp., supra, (relating to Ipalco's duty). Trial court erred in overruling plaintiff's exception to Instruction 10.

Instruction 11 involves defendants' defense that negligence of Crees in three particulars was the sole proximate cause of the accident. These specifications were based on asserted violation by Crees of three regulations promulgated by the employment safety commission pursuant to § 88A.11, The Code, 1971. Chapter 88A of the 1971 Code was repealed in 1972 by 64 G.A. ch. 1028 § 1 and was replaced by the Occupational Safety and Health Act which appears as chapter 88, The Code, 1973. However, regulations under § 88A.11 of the 1971 Code were in effect at the time of the material events in this case.

In instruction 11, the court informed the jury violation of such regulations is negligence. Plaintiff excepted on the basis the jury should have been told instead that violation of such regulations is evidence of negligence. The issue is thus whether violation of the regulations is negligence as a matter of law or merely evidence of negligence.

The regulations relating to crane operation are set out in Iowa Departmental Rules, 1971, at 237. They are:

"3.12(3) Operation.

a. Standard operating signals shall be agreed upon and shall be used to direct all operations.

*   *   *   *   *   *

f. Riding of loads by workmen is prohibited.

*   *   *   *   *   *

"3.12(5) Electrical power lines.

a. An operator shall not operate a crane, derrick, or hoist where any part of the equipment or load being moved comes within ten feet of an energized electric power line rated at thirty-five KV or below."

Plaintiff points out violation of such rules was not punishable upon discovery. Under § 88A.15, The Code, 1971, notice was required to be given the alleged offender affording him a reasonable time to correct a violation before civil or criminal enforcement proceedings were started and criminal penalty could attach. Defendants maintain this court held in Wagner v. Northeast Farm Service Company, 177 N.

W.2d 1 (Iowa 1970), that violation of such rules is negligence as a matter of law.

In Wagner we held only that regulations governing the handling of liquid petroleum gases promulgated by the department of public safety under authority of Code chapter 101 were not merely advisory but had the force and effect of law. There is no claim the regulations in the present case do not have similar force and effect. The Wagner case did not hold violation of departmental safety regulations is negligence per se.

■ As noted in Rosenau v. City of Estherville, 199 N.W.2d 125, 128 (Iowa 1972), the question whether violation of a statute or ordinance fixing a standard of care is negligence per se or evidence of negligence is to be decided in light of the purpose and intent of the pertinent statute or ordinance. The negligence per se concept has been found applicable in most rule of the road situations. See Montgomery v. Engel, 179 N.W.2d 478, 482 (Iowa 1970). We are unaware of any Iowa case holding violation of a departmental rule to be negligence per se.

■ In Lattner v. Immaculate Conception Church, 255 Iowa 120, 121 N.W.2d 639 (1963), a church was accused of negligence in having an exit door which did not open outward in violation of a safety statute. In the face of a contention breach of the statute was negligence per se, we held violation of the statute was evidence of negligence. See Jorgensen v. Horton, 206 N.W.2d 100 (Iowa 1973). We believe the rules involved in the present case are analogous to the statute in Lattner, and we conclude violation of the rules is evidence of negligence but not negligence as a matter of law. Accordingly we hold trial court erred in overruling plaintiff's exception to instruction 11.

Although the issue is not raised, for purposes of retrial we note the specification of negligence charging violation of the rule against employees riding on loads

could not, under the record, have been a proximate cause of the accident.

We have considered plaintiff's exceptions to instructions 13 and 18 and find them without merit when the instructions are read as a whole.

VII. *The special interrogatories.* Included in the draft of the court's proposed instructions furnished to counsel were a number of special interrogatories. Counsel for plaintiff took no exception to them prior to jury arguments. Thereafter he made a record in which he said he had overlooked them earlier but wished to note his exceptions and proceeded to do so.

■ Defendants correctly maintain these exceptions came too late. Failure to take timely exception to instructions waives the right to assert error in them later. Smith v. J. C. Penney Co., supra, 260 Iowa at 587, 149 N.W.2d at 803; rule 196, Rules of Civil Procedure.

■ However, because this case is being reversed and remanded for new trial against the City and Ipalco, we have considered the propriety of the special interrogatories submitted in this case. Generally they seek to elicit findings on mere questions of evidence rather than ultimate facts decisive of the case. This violates the basic principle governing submission of special interrogatories:

> "Interrogatories should not deal with specific terms of evidence. They should be directed toward some ultimate fact which is essential to the jury's determination of the case." Berghammer v. Smith, 185 N.W.2d 226, 235–236 (Iowa 1971).

See Preferred Investment Company v. Westbrook, 174 N.W.2d 391, 396 (Iowa 1970); Ipsen v. Ruess, 241 Iowa 730, 737–738, 41 N.W.2d 658, 664 (1950).

Although we do not decide whether submission of the special interrogatories challenged by plaintiff would have been revers-

ible error had timely exception been taken, we hold that on retrial they should not be submitted.

For the reasons given in Division I, supra, the judgment for Garden is affirmed. For the reasons given in Divisions V and VI, supra, the judgments for the City and Ipalco are reversed and the case against them remanded for new trial.

Costs are taxed one-third to plaintiff, one-third to the City and one-third to Ipalco.

Affirmed in part; reversed and remanded in part.